CUMMINGS & CO., INC., Appellant, v. SAM MASCARI, VINCENT J. WALSH, and W. A. WEATHERSBY, Individually, and d/b/a LIBERTY LIQUOR STORE, Appellees.—402 S.W.(2d) 719.

Western Section. November 10, 1965.

Certiorari Denied by Supreme Court April 18, 1966.*

---

* Supreme Court concurs in result only.

514

Hall Crawford, Memphis, Harsh, Harsh & Crawford, Memphis, of counsel, for appellant.

Jean Anderson Holmes and Robert C. Rosenbush, Memphis, for appellee Sam L. Mascari.

Wiley O. Bullock, Memphis, Bullock & Bullock, Memphis, of counsel, for appellees Vincent J. Walsh and W. A. Weathersby.

BEJACH, J. In this cause, Cummings & Co., Inc., plaintiff in the lower court, appeals from a judgment of

the Circuit Court of Shelby County, entered February 15, 1965, dismissing its suit against the defendants, Sam L. Mascari, Vincent J. Walsh, and W. A. Weathersby, on a lease contract for the construction and rental of signs for a liquor store of the defendants. In this opinion, the parties will be referred to, as in the lower court, as plaintiff and defendants, or called by their respective names.

In its declaration filed July 8, 1964, plaintiff alleges that on January 2, 1963, plaintiff and defendants entered into a Standard Electric Advertising Lease, signed by plaintiff and by defendants, Sam L. Mascari, Vincent J. Walsh and W. A. Weathersby, individually, and doing business as Liberty Liquor Store. Profert of said contract is made, and same was introduced in evidence at the trial. According to plaintiff's declaration, it agree to manufacture, install, maintain and lease to the defendants certain advertising display signs and skeleton neon for defendants' place of business, the Liberty Liquor Store, located at 745 North Parkway, Memphis, Tennessee. The declaration alleges that defendants agreed to lease its advertising display signs and skeleton neon at a total rental of $3,600, payable in sixty monthly installments of $60.00 each, plus sales tax, and that said contract provides for a reasonable attorney's fee if sued on. The contract provides for acceleration in the event of default by the defendants, and the declaration claims as due from defendants the sum of $3,600, plus sales tax, interest and reasonable attorney's fees.

The defendant Sam L. Mascari, through his attorney, Mrs. Jean Anderson Holmes, filed a plea labeled "Answer of Sam L. Mascari", which admits that he signed the agreement sued on but sets up that part of the consideration for said agreement was that the double faced sign

described therein would be located on the street as indicated in the sketch which accompanied the agreement, and to which the agreement refers. Said plea or answer alleges that plaintiff's agent assured this defendant and the other defendants before they signed the agreement that the necessary permission for the location of this particular sign had been secured from the owners of the property, but that plaintiff had in fact, without obtaining such permission, manufactured the sign; "wherefore, the defendant denies that the plaintiff has faithfully and diligently performed or complied with all the obligations of the agreement between the plaintiff and defendants" and maintains that because of this a reduction or recoupment should apply to the agreement and that such recoupment is capable of computation with reasonable certainty. The defendants, Vincent J. Walsh and W. A. Weathersby, through their attorneys Wiley O. Bullock and Bullock & Bullock, filed a plea, labeled "Answer of Defendants Vincent J. Walsh and W. A. Weathersby", which amounts to a combination plea of nil debit and non assumpsit.

The contract sued on by plaintiff was introduced in evidence at the trial and is in the bill of exceptions. It contains the following provisions, which we quote:

"12. BREACH OF AGREEMENT: (a) It is mutually recognized that Display is not an article of general trade or utility, but is designed and is to be constructed, installed and maintained at the request of and for the special distinctive uses and purposes of the Lessee, that Display is of no value to Lessor except as so used, and that it is a material consideration to Lessor in entering into this agreement that Lessee shall continue to use Display as contemplated; and it is expressly agreed that if Lessee shall breach any of the terms,

provisions or agreements contained, or if during the term of this agreement, or any extension thereof, bankruptcy, debtor or insolvency proceedings are commenced by or against Lessee, or if Lessee makes an assignment for the benefit of creditors, or if a receiver is appointed to take possession of the business of Lessee, or if action is taken to accomplish this end, or if Lessee discontinues business in the premises where Display is located, or sells or files, or there is filed on its behalf, notice of intention to sell or mortgage under the Code of Tennessee, or similar statute of another State, or transfers its business or a material part thereof, voluntarily or involuntarily, or if continued use of Display is prohibited for any reason whatsoever, then and in any such event, all of the unpaid rentals to the end of this agreement, or any extension thereof, shall without notice or demand be at once accelerated and become due and payable and all rights and interest of Lessee therein shall thereupon terminate.

(b) Lessee hereby authorizes any attorney-at-law to appear in any court of record in the United States after the above obligation becomes due and waive the issuing and service of process and confess a judgment against Lessee in favor of Lessor for the amount then due together with costs of suit and thereupon to release all errors and waive all right of appeal. It is agreed that in the event of such acceleration and termination, Lessee's interest therein shall be valued at a sum equal to 25% of the amount of the rentals for the unexpired term and that this amount shall be allowed as a deduction from Lessee's obligation herein. Provision is so made as liquidated damages in case of such breach or event, for the reason that it is and would be impractical to ascertain the actual amount of damages.

Upon such termination Lessor shall have the right to apply any deposit made by Lessee, or any unused portion thereof, to the amount that shall so become due hereunder. If Lessor shall institute any suit or action for the enforcement of any obligations of Lessee hereunder including without limiting the payment of damages, Lessee agrees to pay in addition to all sums found due from Lessee, a reasonable attorney's fee. All overdue payments shall bear interest at the rate of 6% per annum.''

''16. PERMISSION: Lessee will apply for all necessary permits from public authorities and pay for the same, and Lessor does not assume responsibility for obtaining the same or preventing their revocation. Lessee shall, at Lessee's own cost and expense, obtain all necessary permission from the owner of the premises and from all others whose permission is necessary for the installation, operation and maintenance of the sign.''

''17. DISCREPANCIES: In the event of any discrepancy between this agreement and sketch and/or plans (if any), specifications of this agreement shall prevail.

18. It is expressly agreed that this is a Tennessee Contract accepted at Nashville, Tenn.

19. ACCEPTANCE OF AGREEMENT: THIS AGREEMENT SHALL NOT BE CONSIDERED AS EXECUTED UNTIL SIGNED BY OR ON BEHALF OF LESSEE AND APPROVED BY A DULY AUTHORIZED OFFICER OF LESSOR AND SIGNED BY HIM ON LESSOR'S BEHALF; and it is further declared, agreed and understood that there

are no prior writings, verbal negotiations, understandings, representations or other verbal agreements between the parties not herein expressed.''

The Lease Agreement is signed by defendants and, on behalf of plaintiff, by George T. Roberts, V.P., and by Eugene R. Ilsley, Salesman. Ilsley was the salesman who negotiated with defendants on behalf of plaintiff.

The principal controversy, at the trial of the case, was, as it has been in this Court, whether or not the Parol Evidence Rule barred admission of evidence presented by defendants to alter or contradict the written instrument sued on. The trial judge, over the objection of counsel for plaintiff, admitted such evidence, and reserved a ruling as to its competency until after he had heard the evidence, and did this in spite of a warning by counsel for defendants that such course might deprive defendants of the right to have the cause transferred to a court of equity if he should rule adversely to defendants. After admitting the disputed evidence under such reservation, and after having taken the case under advisement, the trial judge entered a judgment in favor of the defendants and dismissed plaintiff's suit at its cost, but provided that plaintiff was entitled to have returned to it the ''V'' type plastic sign, two feet by twelve feet, reading ''Liquor'' and the skeleton neon the plaintiff furnished the defendants under the terms of the contract. It must be inferred that the learned judge overruled plaintiff's objection to the parol evidence which contradicted the terms and provisions of the contract. The plaintiff excepted to the ruling of the court, prayed and perfected its appeal to the Court of Appeals.

In this Court, as appellant, plaintiff has assigned three assignments of error, which are as follows:

## "I.

The Court erred in admitting parol evidence to alter or qualify the terms of the written contract as to the location and who would get the permission to locate the large sign.

## II.

The Court erred in ruling that the defendants could repudiate the contract for mistake as to the payments they were required to make under the contract, while retaining the benefits they obtained under the contract.

## III.

The Court erred when it ruled that the plaintiff did not substantially perform its contract.''

These assignments of error present adequately, for our consideration, all material questions involved in this cause. The cause turns on whether or not the trial court erred in admitting parol testimony to contradict or vary the terms of the written instrument sued on. We think that it did.

Of course, that portion of paragraph (b) of section 12 of the contract, quoted above, which authorizes confession of judgment against defendants, was made void by the provisions of section 25-201 T.C.A. It was not relied on in the lower court and was not referred to by the trial judge. We quote it only because it is a part of a paragraph, other portions of which are, we think, material to this lawsuit and to which we will refer in a later portion of this opinion.

Counsel for defendants Walsh and Weathersby took **the position in** the trial court that they were entitled,

under their plea of the general issue, to introduce evidence which varied or contradicted the terms of the written contract sued on, because counsel for plaintiff had not required defendants to plead specially. This position, and the contention based thereon, is, in our opinion, erroneous. From Caruthers' History of a Law Suit, 8th Edition, by Gilreath and Aderholt, Sec. 223, we quote, as follows:

"In actions of debt and assumpsit, which are actions on contracts, express or implied, written or unwritten, the general issues, nil debit and non assumpsit, admit almost every defense, whether by way of denial or avoidance. The plea in neither case puts in issue the execution of the written contract, which constitutes the foundation of the action. This can only be done by the special plea non est factum. And so bankruptcy of the defendant, set-off, tender, and the statute of limitations, must be specially pleaded. And although the law seems to be somewhat in doubt elsewhere, it is settled in Tennessee that matters of defense arising out of the contract sued on, and which would constitute the foundation of a cross action in recoupment or reduction of plaintiff's demand, as the failure of consideration, must be specially pleaded, and upon the same principle, usury should be specially pleaded, which by force of the statute would seem to be necessary in Tennessee. And so the statute of frauds always must be specially pleaded."

■ ■ Counsel for defendant Mascari did file a plea claiming recoupment; but that plea, as same appears in the record before us, cannot be construed as amounting to a cross action seeking recision of the contract sued on. Furthermore, it cannot authorize a violation of the Parol

Evidence Rule, which we think is determinative of this lawsuit. It certainly cannot bring defendant Mascari's plea of recoupment within the provision of section 16-511, T.C.A., which provides: "Any suit of an equitable nature, brought in the circuit court, where objection has not been taken by demurrer to the jurisdiction, may be transferred to the chancery court of the county, or heard and determined by the circuit court upon the principles of a court of equity, with power to order and take all proper accounts, and otherwise to perform the functions of a chancery court." In any event, said plea, as filed, does not seek a recision of the contract sued on by plaintiff.

██ The Parol Evidence Rule in Tennessee requires that a written contract must prevail over previous or contemporaneous contradictory representations; and this is not merely a rule of evidence, but is a rule of substantive law. Litterer v. Wright, 151 Tenn. 210, 268 S.W. 624; Deaver v. J. C. Mahan Motor Co., 163 Tenn. 429, 43 S.W.(2d) 199. Other cases containing a discussion of the Parol Evidence Rule include McGannon v. Farrell, 141 Tenn. 631, 214 S.W.(2d) 432; McQuiddy Printing Co. v. Hirsig, 23 Tenn.App. 434, 134 S.W.(2d) 197; and Marron v. Scarbrough, 44 Tenn.App. 414, 450, 314 S.W.(2d) 165.

In Litterer v. Wright, which was a suit on a lease in which the tenant sought unsuccessfully to set up a parol agreement antedating the lease, the Supreme Court, speaking through Mr. Justice Chambliss, later Chief Justice, said:

"Parol proof of inducing representations to the making of a contract reduced to writing must be limited to matters not otherwise plainly expressed in the writing. No well-considered case will be found holding other-

wise. The fundamental distinction should be kept clearly in mind between the denied right to contradict the terms of the writing, and the recognized right without so doing to resist recovery thereon, or to rely upon matters unexpressed therein. The ultimate test is that of contradiction, which is never permissible.''

Litterer v. Wright, 151 Tenn. 212, 268 S.W. 624.

In Deaver v. J. C. Mahan Motor Co., 163 Tenn. 429, 43 S.W.(2d) 199, the purchaser of an automobile undertook to maintain a suit for breach of warranty, in spite of the fact that the contract of sale contained the recital, ''The seller guarantees only the title to the said automobile to the purchaser and the above constitutes every agreement to be recognized in this transaction.'' The purchaser of the automobile sought to overcome the objection that his contentions were contrary to the provisions of the contract, on the theory of waiver. The Chancery Court and the Court of Appeals adopted this theory and decided in favor of the purchaser, but the Supreme Court granted certiorari and reversed the rulings of both of the lower courts. From the opinion of the Supreme Court in that case, written by Mr. Justice Swiggart, we quote as follows:

''Proof of a previous warranty of quality and condition is in direct and clear conflict with this written stipulation, and is both incompetent and ineffective to alter and change the contract as written.

The respondent contends that the petitioner has waived this defense to the action for damages by failing to object to the competency of the evidence when offered on the hearing before the chancellor. But we think that the question made by the assignments of

error is more than a mere question of evidence. The contention of the Motor Company, expressly stated in its answer, is that the written contract expresses the entire agreement of the parties, and the rule of law relied upon, as stated in Litterer v. Wright, supra, (151 Tenn. 210, 268 S.W. 624) is that the writing must prevail over the previous or contemporaneous contradictory representations. This is not merely a rule of evidence, but is a 'rule of substantive law.' Wigmore on Evidence, sec. 2400. So, notwithstanding the failure of the Motor Company to object to the competency of the evidence of previous parol representations, and notwithstanding the concurrent finding of the two courts on such evidence that prior representations were in fact made, the rights of the parties must be adjudicated according to the written contract, the terms of which repudiate any prior representations of quality or condition as items of an agreement between them. In so ruling, we are dealing only with the action as seeking to enforce the contract by recovering damages for breach of warranty, and not as claiming the right to rescind the contract for inducing fraud; all questions of the right of rescission (sic) having been settled by the decree of the Court of Appeals adversely to Deaver, as heretofore shown.''

Deaver v. J. C. Mahon Motor Co., 163 Tenn. 433-434, 43 S.W.(2d) 200.

■ Applying the above quoted authorities to the facts of the instant case, we think the Circuit Court was wholly lacking in authority to admit in evidence the testimony of defendants and their witnesses to the effect that Eugene Ilsley, salesman for Cummings & Co., Inc., represented to them, both before and after the signing of the lease con-

tract, that he had obtained permission from the owners of the property to place the sign at the edge of the sidewalk where defendants desired to have same placed. In justice to defendants and their able counsel, we must observe that if the parol evidence introduced by defendants had been competent, the overwhelming preponderance of the evidence in the record before us would establish as a fact that such representations were made by plaintiff's salesman Ilsley, although such representations were neither known to nor authorized by Mr. George T. Roberts, plaintiff's vice president, the officer who signed the contract on behalf of plaintiff.

■ We hold, also, on authority of the unreported decision of this Court in the case of Balton & Sons, Inc. v. Murdock Acceptance Corp., decided July 26, 1960, with certiorari denied by the Supreme Court December 9, 1960, that plaintiff in the instant case is entitled to recover a judgment on the theory of substantial compliance with its contract. The facts of the Balton case are substantially identical with those involved in the instant case, except that in that case permission of the City of Jackson, Mississippi could not be obtained to place the sign where the purchaser wished it, whereas in the instant case, it is failure to obtain permission of the owner of the property to place the sign where the defendants wished it which prevented full and complete performance of the contract.

■ In addition to the Parol Evidence Rule, which we have discussed above, and which we think is controlling in the instant cases, defendants are, in our opinion, foreclosed by the rule that independent of the Parol Evidence Rule, all prior agreements must be held to be merged in the written contract as finally executed. As was said by

this Court in Marron v. Scarbrough, applying that secondary rule to the facts of that case:

"Closely allied to the parol evidence rule, although not necessarily a part of same, but equally applicable to the facts of the instant case, is the rule that prior agreements, whether oral or written, are merged into the written contract as finally executed. Williston on Contracts, Volume II, page 1379-1380, Sec. 723; pages 1763-1764, Sec. 926; Volume III, page 3145, Sec. 1826; American Fruit Growers, Inc., v. Hawkinson, 21 Tenn. App. 127, 106 S.W.(2d) 564, 565. This rule of law, in our opinion, precludes the complainant in the instant case from relying on any alleged oral agreement made prior to the execution of the written contract of sale on January 14, 1953."

Marron v. Scarbrough, 44 Tenn.App. 453, 314 S.W. (2d) 182.

In our opinion, the remedy of defendants, if any, under the evidence which we hold should have been excluded in the trial court, would have been to file an independent suit in the Chancery Court seeking a recision of the contract sued on. Such suit might even have been filed in the Circuit Court, under the provisions of sec. 16-511 T.C.A., and maintained there in the absence of an objection by demurrer. It is even possible that such equitable relief might have been sought in the instant case by a cross action filed under authority of the same Code section and subject to the same possibility of objection by demurrer; but no such cross action was filed by either of the defendants. Even after plaintiff's suit was filed, defendants might have gone into the Chancery Court with a bill seeking an injunction against further prosecution of the suit. Having elected, however, to allow the instant

suit to continue unenjoined in the Circuit Court, and having defended same only on the basis of wholly incompetent proof, defendants must take the consequences of a reversal by this Court, accompanied by a judgment entered here in accordance with the record which is before us. The possibility of relief in an appropriate case is indicated by the language of the Supreme Court in Deaver v. J. C. Mahan Motor Co., 163 Tenn. 429, 43 S.W.(2d) 199.

█ Having determined that plaintiff is entitled to a reversal in this Court, and to have a judgment entered in this Court, we will next dispose of the amount of the judgment to which plaintiff is entitled. The cause comes to us under the provisions of sec. 27-303 T.C.A., and we must render such judgment as should have been ordered by the Circuit Court.

The contract provides in section 12 of same, which is quoted above,

"It is agreed that in the event of such acceleration and termination, Lessee's interest therein shall be valued at a sum equal to 25% of the amount of the rentals for the unexpired term and that this amount shall be allowed as a deduction from Lessee's obligation herein. Provision is so made as liquidated damages in case of such breach or event, for the reason that it is and would be impractical to ascertain the actual amount of damages."

█ The contract price was $3,600, and the sales tax of 4%, including the 1% municipal tax in Memphis, Tennessee, amounts to $144.00. Deducting the 25% provided for in the above quoted provision of the contract from both the contract price and from the amount of the sales tax, leaves a balance of $2,700, plus $109.00 sales

tax, making a total of $2,808. In the lower court, plaintiff claimed the entire sum of $3,600, plus the $144.00, but in this Court, its counsel concedes the limitation of defendants' liability to be as above stated. In addition, however, counsel for plaintiff claim interest in accordance with the contract on overdue payments, together with a contention that plaintiff had completed work on the sign by Labor Day in September of 1963, from which date they claim interest, and that it is also entitled to a recovery of attorney's fees as provided for in the contract, which is claimed in the sum of 20% of the amount of the recovery. Instead of figuring interest on deferred payments from Labor Day of 1963, we will allow interest on plaintiff's recovery from the date of the filing of suit by it, which was July 8, 1964. We cannot, however, allow attorney's fees in the instant case, because the contract provides merely for a "reasonable attorney's fee" and no proof was offered in the lower court as to what would constitute a reasonable attorney's fee. In that situation, on authority of Nu-Way Ice Cream Machine Co. v. Pig'n Whistle, 16 Tenn.App. 581, 65 S.W.(2d) 575, we must disallow the recovery of attorney's fees. From the opinion of Judge Senter in the Nu-Way Ice Cream Machine Co. case, we quote as follows:

"The note sued on provided for the payment of reasonable attorney's fees in the event the note was placed in the hands of an attorney for collection. Complainant did not introduce any evidence to prove what would be a reasonable attorney's fee. The chancellor held that 10 per cent of the balance due on the note would be reasonable and proper, and decreed accordingly. The assignment of error by appellant on this action of the court presents the question that the chancellor was not authorized to decree any amount for

attorney's fees in the absence of proof, since the note did not provide any specific amount, but merely provided for reasonable attorney's fees. We are of the opinion that this assignment of error should be sustained. If the note had provided a specific amount to be allowed and paid as attorney's fees, and the chancellor was of the opinion that that amount was reasonable, proof would have been unnecessary, since the contract showed that the item was the amount agreed upon between the parties in advance. But such is not the case that we now have. In the absence of any proof as to what would be a reasonable attorney's fee, and the failure upon the part of complainant to make any proof on that subject, we think that it stands as waived, and the chancellor was in error in fixing any amount unless there was an agreement by both parties that the chancellor could fix the amount without evidence, and no such agreement appears to have been made.''

Nu-Way Ice Cream Mach. Co., Inc. v. Pig'n Whistle, 16 Tenn.App. 589-590, 65 S.W.(2d) 579.

The Nu-Way Ice Cream Machinery Co. case has been cited with approval on this proposition of law in National Union Fire Ins. Co. v. Baker, 21 Tenn.App. 60, 64, 105 S.W.(2d) 114; and in Burge Ice Machine Co. v. Strother, 197 Tenn Tenn. 391, 404, 273 S.W.(2d) 479.

For the reasons hereinabove stated, the judgment of the Circuit Court of Shelby County will be reversed and judgment entered in this Court in favor of plaintiff, Cummings & Co., Inc., and against the defendant, Sam L. Mascari, Vincent J. Walsh, and W. A. Weathersby, individually and d/b/a Liberty Liquor Store, for the sum of $2,808, plus interest at the rate of 6% per annum from

July 8, 1964, the date of filing of suit in this cause, and all of the costs of the cause, including both those of the Circuit Court of Shelby County, Tennessee and those of the Court of Appeals.

Avery, P.J.(W.S.), and Carney, J., concur.