BELMONT LAND & MINING CO. v. C. A. NOONE.

Eastern Section. March 15, 1930.

Petition for Certiorari denied by Supreme Court, August 8, 1930.

D. Sullins Stuart, of Cleveland, and Sizer, Chambliss & Sizer, of Chattanooga, for appellant.

Allison, Lynch & Phillips, of Chattanooga, for appelee.

THOMPSON, J. The complainant, Belmont Land & Mining Company, instituted this suit against the defendant, C. A. Noone, to re-

cover unpaid principal, interest and attorney's fees upon three promissory notes given as part payment of the purchase price of the mineral interests, etc. in some land in Bradley County. On final hearing the Chancellor dismissed the bill at complainant's cost upon the ground that the contemporaneous written contract, deed and deed of trust disclosed that the defendant was not to be held personally liable on the notes. The complainant has appealed to this Court and has assigned errors.

The complainant was a corporation of which Mr. J. R. Ryan was president and Mr. H. L. Davis secretary and treasurer. It owned the mineral interests and mining rights in a 241 acre tract of land in Bradley County, containing manganese ore. Said property formerly belonged to J. R. Ryan, who conveyed it to the corporation in the year 1923. Prior to that conveyance Ryan had conveyed it in escrow to one Lord of Chicago, for the price of $40,000. Lord operated it for a while during the war period and paid $26,000 on the purchase price, some of which seems to have been realized from the sale of ore, but he quit and let the property go back to Ryan who retained the $26,000. Ryan, who has been a field man for 25 years and was with the geological survey, made efforts at two different times to develop the mines himself, but gave up his efforts on account, as he says, of his lack of capital. In the summer of 1926, complainant sold the property to one C. E. Klinger for the price of $35,000, of which Klinger paid $2,500. Klinger, after four months, quit and turned the property back, the complainant retaining the $2,500. In November, 1926, the complainant gave L. J. Breed a short time option to buy the property for $28,000 cash. This option was renewed by complainant and was then surrendered by Breed. In the meantime complainant had arranged with one W. H. Wainwright to develop the property for the purpose of sale by driving shafts or slopes into the ridge containing deposits of ore. Under this arrangement Wainwright was to have the ore he got out of the drives free of charge, and if he did not get out enough to pay him for his time and expenses before complainant effected a sale, he was to be repaid out of the proceeds of the sale. He drove two slopes and found ore in both.

This was the situation when the attention of the defendant was attracted to the property. The defendant is a reputable and successful lawyer of fourteen years' experience at the Chattanooga Bar. He admits that he could not tell a lump of manganese ore from so much coal. His attention was attracted to the property by one C. L. Hall, who was interested in Klinger's contract and brought defendant in contact with Klinger. Klinger represented the property to be good mining property and himself to be a mining man. The proof is, however, that he was not the agent of complainant or in

any way authorized to speak for it. Defendant then took the matter up with F. E. Spencer, a business man of Chattanooga. Spencer knew nothing about mining. They in company with Klinger visited the property, where defendant went down into one of the slopes and also had some conversation with Ryan. Spencer went down into both slopes. They were a little elated, so defendant says. They contemplated forming a corporation to take over the property and carry on mining operations on the land. After their return to Chattanooga they entered into negotiations with Ryan and Davis which resulted in the transactions hereinafter related.

We might state here that defendant and his witnesses testify that in the negotiations it was thoroughly understood and agreed that the $5,000, cash part of the purchase price was all that either the defendant (or the proposed corporation for that matter) was to be individually or personally liable for; that it was agreed that one-third of the gross collections from the sales of the ore to be mined would be paid on the deferred payments of the purchase price; and that the complainant would look alone to the property for the balance. Complainant's witnesses, on the other hand, deny that it was agreed and understood that defendant (or the corporation) was not to be personally or individually liable for the entire purchase price and that complainant was to look alone to the property for the balance of said purchase price. The Chancellor held that this parol evidence was incompetent and could not be looked to, and both parties seem to concur in this ruling. However, we might also state that if said evidence could be looked to we would be of the opinion that the defendant's evidence outweighs the complainant's.

However, this may be, the negotiations resulted in the execution of three instruments and the three notes sued upon. The first paper signed by the parties was a contract as follows:

"Chattanooga, Tennessee,
December 17, 1926.

"Articles Of Agreement Entered Into by and between the Belmont Land & Mining Company, a mining corporation with offices in Chattanooga, Tennessee, herein styled party of the first part, and C. A. Noone, Trustee, (as trustee and not individually) herein styled party

WITNESSETH:

of the second part.

"The party of the first part is the owner in fee of the mineral interests and mining rights to the following described property located in Bradley County, Tennessee:

(Here followed the description which we omit) which they are willing to and by this agreement, through their duly constituted and authorized officials, bind themselves to sell and convey, by warranty deed, to the party of the second part, or his duly au-

thorized successors or assigns, for the sum of $28,000, upon the following terms and conditions, to-wit:

"(a) $5,000, cash to be paid into the Hamilton National Bank, to be held in escrow until a deed to the property heretofore described herein with abstract or satisfactory guaranty of title is delivered. Upon said deed and satisfactory title to the property being delivered to the Hamilton National Bank, within fifteen (15) days, the $5,000, is to be paid to the parties of the first part; otherwise to be returned to the party of the second part or his assigns.

"(b) $23,000 is to be represented by three (3) notes of $7,666.66, each, the first note will mature six months from date of the delivery of the deed; the second twelve months from said date, and the third eighteen months from said date. Said notes are to bear six (6%) interest from date, and will be so drawn that default in the payment of any note at maturity or the default in the payment of any interest when due, and should said note or interest remain in default for thirty (30) days thereafter the remaining notes and interest will become immediately due and payable at the option of the owner and the holder thereof. Said notes are to be drawn subject to the terms and conditions set out in a deed of trust which will be executed contemporaneously with the execution and acceptance of the deed and will provide a thirty day default clause. The deed heretofore referred to is to retain a vendor's lien on the property.

"(c) It is mutually understood and agreed by and between the parties that one-third of the gross collections from the sales of ore mined will be applied to the liquidation of the balance due on the purchase price; that the settlements will be made between the 1st and 10th of each succeeding month; that the parties of the first part are to have access once a month to the records of the company, which will operate the mine and that they will be privileged, at their own expense should they so desire, to keep someone at the mines to check on all shipments.

"(d) All fixtures attached to the real estate will become permanent improvements thereto and are to be included in the deed of trust as security for the payment of the deferred installments of purchase price.

"(2) The party of the second part, who acts as trustee and not in an individual capacity, is representing interests who will organize a corporation with a capital of $15,000. As soon as this corporation is legally organized the title to the real estate hereinbefore described, and being the real estate, or the right and interest therein, which is being conveyed by the parties of the first part, will be conveyed to said corporation, of which F. E. Spencer is to be the President, and said corporation will carry out the terms and pro-

visions required by the parties of the first part as hereinbefore stipulated.

"The party of the second part will assign all rights herein to the corporation heretofore referred to herein as soon as the organization of said corporation is completed.

"Witness our hands at Chattanooga, Tennessee, this the 20th day of December, 1926.

> "Belmont Land & Mining Company,
> By J. R. Ryan, President,
> By H. L. Davis, Secretary.
> As trustee and not in an individual capacity and without personal liability to himself or his cestui que trust.
> C. A. Noone, Trustee."

The three notes are identical except as to the dates of maturity. We quote only one. It is as follows:

> "Chattanooga, Tenn., December 20, 1926.

"For value received six months after date I promise to pay to the order of Belmont Land & Mining Company ($7,666.66) seven thousand six hundred sixty-six and 66/100 dollars, negotiable and payable at The First Nationat Bank of Chattanooga, with legal rate of interest after date until paid. If this note is collected by attorney, by suit or otherwise, we hereby agree to pay all fees and costs of collection. Demand, notice and protest is hereby expressly waived by the makers and endorsers of this note. Interest payable semi-annually, secured by deed of trust—default in payment of any note or interest for thirty days makes all remaining notes and interest due and payable at option of holder.

> C. A. Noone, Trustee."

We will not quote the deed of conveyance from the complainant to the defendant, Noone, as trustee. But it was dated and was executed on December 20, 1926, and conveyed the mineral interests and mining rights in the land to "C. A. Noone, Trustee, with full power to sell and convey without disclosing his cestui que trust, and without the purchaser being required to see to the application of the purchase money," etc. It recited a consideration as follows:

"For and in consideration of the sum of twenty-eight thousand ($28,000) dollars paid and to be paid as follows: Five thousand ($5,000) cash, receipt of which is hereby acknowledged and the execution by the grantee of his promise to pay three (3) notes for the sum of seven thousand six hundred sixty-six and 66/100 ($7,666.66) dollars, each for which a vendor's lien is retained upon the property conveyed."

We will not quote the deed of trust which the defendant Noone, as trustee, executed to secure the three notes. It was executed on Decem-

ber 20, 1926, and of course conveyed the said mineral interests and mining rights. Its granting clause was as follows:

"This indenture made and entered into the 20th day of December, 1926. Witnesseth, that for and in consideration of the sum of one dollar ($1) cash in hand paid, receipt whereof is hereby acknowledged, and for the use and purposes hereinafter expressed, C. A. Noone, Trustee as such trustee and without personal liability to himself or his cestui que trust do hereby grant, bargain, sell and convey unto the First National Bank of Chattanooga," etc.

Said deed of trust contained covenants of title as follows:

"To have and to hold the same to the said The First National Bank of Chattanooga, as Trustee, and to its successors in trust and assigns forever.

"And I, the said C. A. Noone, Trustee, for myself or my assigns, covenant with the said Trustee, and its successors in trust and assigns that I am lawfully seized and possessed of the said property herein conveyed, and that the same is free and clear from all taxes, liens and encumbrances whatsoever except balance of purchase price and taxes, being whatsoever encumbrances are thereon as of this date, and that I have a good right, full power and lawful authority to convey the same, and the title thereto will warrant and forever defend against the lawful claims of any and all persons whomsoever."

The purposes of the trust were expressed as follows:

"This conveyance is made in trust, however, for the following uses and purposes, and none other; to secure the payment by me, the said C. A. Noone, Trustee, of a certain indebtedness in the just and full sum of twenty-three thousand ($23,000) dollars, as evidenced by three (3) promissory notes of this date payable to the order of Belmont Land & Mining Company at First National Bank, of Chattanooga, Tennessee, and described as follows," etc.

Said deed of trust was signed: "C. A. Noone, Trustee."

It will be observed that the notes, deed and deed of trust were dated and were executed on December 20, 1926. This was in Mr. Noone's office. It will also be observed that the contract at the top begins: "Chattanooga, Tennessee, December 17, 1926," but ends up: "Witness our hands at Chattanooga, Tennessee, this the 26th day of December, 1926." Defendant and Mr. Spencer testified that although it may have been drawn up on December 17, 1926, it was not signed by the parties until December 20, 1926, just before the execution of the notes, deed and deed of trust—all in the office of Mr. Noone. Mr. Ryan and Mr. Davis, on the other hand, testified that said contract was signed by the parties two or three days before the notes, deed and deed of trust were executed by the parties on December 20, 1926.

Mr. Ryan, after testifying that he thought that the contract was

signed about three days before the notes, deed and deed of trust were signed, testified as follows:

"Anyway this contract was signed while the deed was being gotten up, and some conditions connected with the deal, whatever time that was; this contract was signed in order to give time to get up the deed and get things straightened up."

The $5,000 cash, which was paid the complainant on December 20, 1926, was raised by Mr. Noone and Mr. Spencer, each putting up $2,500. Immediately thereafter Noone and Spencer began steps to organize a corporation under the name of Manganese Ore Mining Corporation—the incorporation of said company being completed on December 23, 1926. Its capital stock was $15,000, of which $7,500 was issued to Noone and $7,500 to Spencer. Noone as trustee, then assigned the contract to the corporation. Noone and Spencer put up another $2500, or $3000, apiece to furnish the corporation with capital to operate the mines. The corporation did operate the mines for about four months and paid to complainant one-third of the proceeds of the gross sales of the ore which it mined. However, during this four months, the corporation was able to get out only $172.73, worth of ore. Then Noone and Spencer sold their stock in the corporation to Messrs. McGinnis and Hedrick for $10,000.

Very soon thereafter, and on April 26, 1927, Noone, as trustee, conveyed the mineral interests and mining rights to the said corporation. The granting clause of this deed was as follows:

"For and in consideration of the sum of one dollar ($1) to me cash in hand paid and other valuable considerations, the receipt of which is hereby acknowledged, I, C. A. Noone, Trustee, do hereby sell, transfer, quit-claim and convey unto the Manganese Ore Mining Corporation, a corporation, all my right, title and interest as such trustee in and to the minerals, mineral interests and mining rights in the following described property," etc. This deed ended: "To have and to hold the same unto the said Manganese Ore Mining Corporation, its successors and assigns in fee simple." It seems that this deed was in the form desired by the then attorneys of said corporation.

Thereafter, of course under the control of McGinnis and Hedrick, the corporation continued to operate the mines until a short time prior to the filing of this bill on November 22, 1927. It ceased its operations because what ore there was in the land cost more to mine than it would sell for. On July 26, 1927, which was of course after Noone and Spencer had sold their stock to McGinnis and Hedrick, the corporation paid the interest on the note to June 20, 1927, and also paid $1,000, on the principal of the first note. This was all that was ever paid, but no demand was ever made by the complainant upon Noone until shortly before this suit was instituted.

In holding that complainant was not entitled to recover from Noone on the notes the Chancellor among other things said:

"If the face of the notes is alone to be considered, then the defendant is liable, because upon the face of the note he did not disclose who his principal was or that there was any principal, and does not expressly reserve personal liability.

"Parol proof is inadmissible to show an agreement between the parties that he was not to be bound personally. This is conceded by the defendant.

"If one so signing a note or other obligation expressly stipulates or recites therein that he does not bind himself personally, such stipulation or recitation is effective to relieve him from personal liability.

"The stipulation against personal liability may be contained in a contemporaneous collateral instrument in writing, and it will be effectual. The two foregoing propositions are true, even though it results that the note or other purported obligation is not binding upon anybody.

"Section 20 of the Negotiable Instruments Law does not militate against these conclusions. That section provides that the mere addition of words describing the signer as bearing a representative character does not exempt him from personal liability. It does not follow that such exemption, good as between the parties, may not be made to appear in a collateral contemporaneous instrument.

"It is the insistence of the defendant that such exemption does appear from three instruments which were executed contemporaneously with the execution of the notes and as a part of the same transaction . . . . . . .

"Upon the face of the papers and from the proof in the cause I think that the notes sued on and the foregoing instruments, including the preliminary contract, were contemporaneous papers relating to the same transaction and should be considered and construed together. . . . . .

"Now, construing all of these papers together my opinion is that they show, without resort to parol evidence, an intention that Noone was not to be bound personally upon any of the obligations. I think that the "C. A. Noone, Trustee," who signed the notes and took the deed of conveyance was the same C. A. Noone, Trustee, who signed the contract and the deed of trust, "not in an individual capacity and without personal liability to himself or his cestui que trust."

"These words would be practically meaningless unless they are given this effect. The only obligation which could have developed upon defendant and against which he could have any purpose to protect himself was personal liability for the purchase price of the mineral interests being conveyed. It is said that these words, when found in the deed of trust, merely show an intention on defendant's part not

to be bound upon the covenants of title contained in that deed. In the first place, his liability upon the covenants of title was obviously not such as he would have been at pains to protect himself against if that had been all. In the second place, his name appears in the covenants in exactly the same way that it appears in the notes, and if the words I have quoted above were sufficient to save him from liability upon the covenants I do not see why they should not have the same effect in regard to the notes. Written in the initial contract and repeated in the deed of trust, they serve notice to Ryan and Davis, representing the complainant, that throughout the transaction the defendant was not intending to bind himself personally. Of course such an intention on his part would be of no avail against the prima facie legal effect of the notes, unless it was expressed or necessarily implied from the other writings, but I think it was so expressed.

"Stress is laid upon the words and his promise to pay," appearing in the deed of conveyance, but this is the promise of the grantee in the deed and the grantee was this same trustee acting "not in an individual capacity and without personal liability." For that matter each of the notes is in form a promise to pay, but the other writings show that this was not the promise of the defendant personally. It is said that it would be unreasonable to suppose that the complainant would agree to look to the one-third of the gross sales for its pay. It did not so agree. It had the whole mining interests as security, with whatever fixtures might thereafter be attached to the land.

"It is further said that at the time the notes were executed the corporation was not in existence and unless the defendant was bound, nobody was bound. This is so, but the land was bound, and after receiving $5,000 of the purchase price in cost, it may well be that the representatives of the complainant were content to look to the land for the balance if they had any sort of faith, as they say they had, in its value as shown by the reports of Urban and Morrison. Such an arrangement is by no means without precedent. At all events it was the arrangement made in this instance."

It seems to us that the foregoing quotation from the Chancellor's opinion answers every contention made in behalf of the complainant.

We think that the contract, the deed and the deed of trust which Noone executed were contemporaneous written instruments with the notes, and that all of said papers read and taken together and without parol or extrinsic evidence show clearly that it was the intention of the parties that Noone be not personally liable on the notes. And we are convinced from our examination of the authorities that Noone could successfully, as we think he did, stipulate against personal liability on said notes in said contemporaneous written instruments. Nor do we think that there is anything in the Code sections cited by complainant which prevented him from so stipulating.

We have considered the assignments of error and the contentions and arguments in support thereof made in behalf of the complainant, but in our opinion none of them are well taken.

The decree of the Chancellor will therefore be affirmed, with costs. Portrum and Snodgrass, JJ., concur.