**FARMERS & MERCHANTS BANK, Plaintiff-Appellant,**

v.

**Clyde L. PETTY, Etta Petty, Andrew Petty and Kathy Petty, Defendants-Appellees.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Sept. 30, 1983.

Permission to Appeal Denied by Supreme Court Dec. 19, 1983.

Kirk C. Waite, Edward S. Kelly, Jr., Charles C. Morrow, Nashville, for plaintiff-appellant.

Michael Noel, Gerald D. Richardson, Nashville, for defendants-appellees.

## ABRIDGED OPINION

TODD, Presiding Judge, Middle Section.
(With concurrence of participating judges, the original opinion has been abridged for publication)

The plaintiff, Farmers and Merchants Bank, has appealed from a jury verdict and judgment dismissing its suit against the defendant, Clyde L. Petty, and awarding said defendant a $5,000.00 judgment upon his counterclaim.

In June, 1977, Andrew Petty undertook to enter the house-building business, and his father, Clyde L. Petty, co-signed a $2,000.00 note at the plaintiff bank to obtain capital for the business. By subsequent transactions, the indebtedness of Andrew and Clyde Petty to the bank increased to $35,267.00 for which Andrew and Clyde signed a note on March 17, 1979.

This suit was brought to collect the $35,267.00 note. Clyde L. Petty plead fraud and counterclaimed for damages.

The fraud claimed by appellee was that he was induced to sign the note by the statement of the president of appellant that appellee would never have to pay the note.

The transcript reflects that the jury was asked to deliberate first upon a special issue and that they reported as follows:

THE COURT: Mr. Foreman, I will read the question. And, if you will, deliver the answer of the jury.

"Did Clyde L. Petty execute a certain note which is the subject of this action to the Farmers & Merchants Bank as a result of relying on false or fraudulent statements and misrepresentations made by Carner Brown, the president of the bank?"

What is your answer?

MR. TRENTON: Yes.

Thereafter, the jury was charged further and, after further deliberation, the following occurred:

THE COURT: Members of the jury, have you arrived at a verdict?

MR. TRENTON: We have, Your Honor.

THE COURT: How say you?

MR. TRENTON: For the Plaintiff, compensatory, $5,000. Punitive nothing.

It appears that no general verdict was ever rendered by the jury on the suit upon the note; but, as a result of the above finding of fact, the Court entered a judgment dismissing plaintiff's suit and awarding Clyde L. Petty a judgment against plaintiff-appellant for $5,000.00 and costs.

The first issue presented by appellant is as follows:

1. Was it error for the trial jury to hold that the Defendant Clyde L. Petty executed a note of March 17, 1979, to the Plaintiff Farmers & Merchants Bank in the amount of $35,267.00 as a result of false or fraudulent statements and misrepresentations by the Plaintiff and its agents?

A more appropriate wording of the first issue would be:

Whether or not there is any material evidence of fraud sufficient to invalidate the note which is the subject of this suit.

Appellee testified that he had known appellant's president all his life, had banked with plaintiff since 1928 without problems until this suit; that, after the initial loan secured by appellee's signature, plaintiff made a number of loans to Andrew Petty without appellee's signature, that Andrew Petty became grossly overdrawn at the bank and appellant's president told him (appellee) that if he (appellee) would sign a note for $18,000 to cover the overdraft and get the president "off the hook" with the bank examiners, he (appellee) would never have to pay the note: that, 6 months after the $18,000 note was signed, the president of appellant sent a note to appellee in the amount of $35,000.00 to be signed by appellee; that appellee took the note to the president of appellant and had a conversation he described as follows:

"Well, he and I had about two hours or much better conversation.—I told him first that he could have a second mortgage and I was coming off of it. He said "no, I want you on it, and we'll leave the second mortgage on it."

Then, he promised me faithfully that if I would sign it—again, that the bank examiners were coming, and to get him off of the hook. And he guaranteed me that I would never have it to pay."

█ The jury evidently believed the foregoing testimony as to the guarantee that appellee would never have to pay the note. This Court is not authorized to review or reverse the finding of the jury as to the credibility of witnesses. *Truan v. Smith,* Tenn.1979, 578 S.W.2d 73, 100 A.L.R.3rd 715; *Moore v. Bailey,* Tenn.App.1981, 628 S.W.2d 431; *Lasseter v. Henson,* Tenn.App. 1979, 588 S.W.2d 315.

█ Since this Court must accept as true the testimony of appellee, the issue becomes one of law, as follows:

Where the payee of a note obtains the signature of a maker of the note by a promise that the maker will never be required to pay the note, does this constitute a fraud by which the maker may successfully defend a suit on the note?

In *Fowler v. Happy Goodman Family,* Tenn. 575 S.W.2d 496, plaintiffs sued for fees due from defendant who plead fraud

consisting of promises by plaintiff to protect him from certain competitive advertising and to grant certain concessions in respect to future fees or future agreements. The Supreme Court affirmed a summary judgment for the plaintiffs and said:

> "Tennessee has long adhered to the rule that in order for a fraudulent misrepresentation to be actionable, it must consist of a statement of an existing or past material fact, made with knowledge of its falsity or with reckless disregard of the truth. Although a minority view, the rule established by the cases in this state has been that a misrepresentation of intention or a promise without intent to perform is legally insufficient to support a claim for rescission or damages. See *A. Landreth Co. v. Schevenel*, 102 Tenn. 486, 52 S.W. 148 (1899). This rule has been adhered to in a number of decisions, including the fairly recent case of *Bolan v. Caballero*, 220 Tenn. 318, 417 S.W.2d 538 (1967).

> In the latter case, however, this Court indicated that it would be willing to consider adopting the rule followed in a majority of jurisdictions with respect to the subject "in a proper case where justice demands..." 220 Tenn. at 326, 417 S.W.2d at 541.

> Under the majority view, in order for actionable fraud to be based upon a promise of future conduct, it must be established that such a promise or representation was made with the intent not to perform. A statement of intention must be false and the intention not actually held. See Prosser, Law of Torts § 109 at 728–730 (4th ed. 1971); Restatement (Second) of Torts § 530 (1977); Annot., 51 A.L.R. 46 (1927); 68 A.L.R. 635 (1930); 91 A.L.R. 1296 (1934); 125 A.L.R. 879 (1940).

> We recognize that where a claim of fraud is presented, ordinarily only upon a full trial of the action can the issue properly be developed. As a general rule, summary judgment is not an appropriate procedure for the disposition of such an issue. See *Long v. State Farm Fire &*

*Casualty Co.*, 510 S.W.2d 517, 519 (Tenn. App.1974).

> Nevertheless, it is incumbent upon the party asserting fraud, when confronted by a motion for summary judgment, to produce some competent and material evidence legally sufficient to support his claim or defense. The affidavit of petitioner in the present case does not contain any evidence which would sustain a defense of fraud in the inducement under the existing Tennessee rule referred to above.

> Apparently conceding this, petitioner strongly urges us to use the present case as a vehicle for changing the rule with reference to "promissory fraud" and to adopt the view followed in the majority of other jurisdictions. However, we are of the opinion that the affidavit, tested by the majority rule, is legally insufficient and wholly fails to establish by any competent and material evidence that the promises and representations of respondents as to their future conduct were made without any intention on their part to perform. Their failure to perform is sufficiently stated, but only petitioner's subjective belief and his unspecified "information" are advanced in support of the claim of fraudulent intent to deceive and not to undertake performance.

> Absent any admissions in the respondent's pleadings which would support a claim of inducing fraud under either the majority or the minority view, petitioner was obligated to take depositions, demand answers to interrogatories, submit requests for admissions or, at a minimum, to file supporting affidavits containing facts which, in the language of Rule 56.-05, "would be admissible in evidence" in support of his contention. His subjective belief and his other unspecified information are legally insufficient."

It is to be noted that the Supreme Court has not adopted the doctrine of promissory fraud in Tennessee, but has merely indicated a willingness to consider adopting the rule "in a proper case where justice demands". Also, the Court has limited its willingness to those cases where the state-

ment of intention is shown to be false when made (i.e., a misrepresentation of actual present intention) by evidence other than subsequent failure to keep the promise or subjective surmise or impression of the promisee.

In the present case, the "promise" was, "I guarantee that you will never have to pay". This was not equivalent to a promise that the bank would never prosecute a suit against appellee. The note was apparently secured by a second mortgage, and the assurance of bank-president might reasonably have been based upon an opinion or belief that the security was ample to satisfy the note. Also, appellee's son was the principal obligor on the note. The assurance may have been based upon an expectation that the son would pay to protect his father. But even if the "guarantee" should be interpreted as an unequivocal promise that the bank would not insist upon payment by appellee, there is no evidence, circumstantial or otherwise that the representation was false when made, that is, that when the president in effect said "the bank will not sue you" his real intention was "the bank will sue you".

In view of the foregoing, it does not appear that the present case is one in which the Supreme Court has expressed a willingness to consider adopting (and following) a rule of promissory fraud.

Even if this should be a suitable case for such consideration, it is doubtful that it would be proper for this Court to undertake the re-writing of Tennessee Law so long established by Tennessee Courts. *Silvers v. TTC Industries, Inc.,* 484 F.2d 194 (CA Tenn.1973); *Bolan v. Caballero,* 220 Tenn. 318, 417 S.W.2d 538 (1967); *A. Landreth Co. v. Schevenel,* 102 Tenn. 486, 52 S.W. 148, 1899; *McElroy v. Boise Cascade Corp.,* Tenn.App.1982, 632 S.W.2d 127; *Young v. Cooper,* 30 Tenn.App. 55, 203 S.W.2d 376 (1947).

Another reason why the doctrine of promissory fraud should not be applied to the present facts is that the alleged fraudulent statement expressly negated the obligation of a written instrument. In *Fowler v. Happy Goodman Family,* the alleged fraudulent statement did not contradict a written contract but related to other collateral matters between the parties. In the present case, the theory of defendant-appellee is, "I signed a written obligation to pay $35,000.00, but he told me I was not to be obligated". This would be a clear instance of parol evidence offered to contradict the sole obligation of a written contract.

■ The rule that a written contract must prevail over previous or contemporaneous contradictory representations is not merely a rule of evidence, but one of substantive law. *Maddox v. Webb Construction Co.,* Tenn.1978, 562 S.W.2d 198; *Cummings & Co. v. Mascari,* 55 Tenn.App. 512, 402 S.W.2d 719 (1965); *Patterson v. Anderson Motor Co.,* 45 Tenn.App. 35, 319 S.W.2d 492 (1959); *Marron v. Scarbrough,* 44 Tenn. App. 414, 314 S.W.2d 165.

■ Terms of a note cannot be varied by oral proof. *Rush v. Chattanooga Dupont Emp. Credit Union,* 210 Tenn. 344, 358 S.W.2d 333 (1962); *Todd v. Third Nat. Bank,* 172 Tenn. 586, 113 S.W.2d 740 (1938).

■ Parol evidence of an oral agreement alleged to have been made at the time of the drawing, making or indorsing of a bill or note cannot be permitted to vary, qualify, contradict, or add to or subtract from the absolute terms of the written contract. *Specht v. Howard,* 83 U.S. 564, 16 Wall. 564, 21 L.Ed. 348 (1872).

■ Proof is inadmissible to show an oral agreement that the maker of a note was not to be personally bound. *Lazarov v. Klyce,* 195 Tenn. 27, 255 S.W.2d 11 (1953); *Belmont Land & Mining Co. v. Noone,* 13 Tenn.App. 152 (1930).

■ Where a note is an unconditional promise on its face, parol evidence is inadmissible to show an oral condition. *Seaton v. Dye,* 37 Tenn.App. 323, 263 S.W.2d 544 (1954).

Granting the necessity and justice of allowing defenses based upon misrepresentations which do not contradict or change the plain terms of a written instrument, the

allowance of defenses based on oral statements clearly inconsistent with the written instrument sued upon would appear to be a radical departure from long established and accepted rules of law and would defeat the very purpose of committing agreements to writing.

Without doubting the veracity of the testimony of defendant-appellee, it must be recognized that one of the reasons for the parol evidence rule is to prevent fraud in presenting oral defenses to written instruments. That is, the parol evidence rule assumes that the parties deliberately chose to put their agreement in writing to avoid the uncertainties of oral evidence, including the possibility of false testimony as to oral conversations. Thus, the parol evidence rule is a "quasi-statute of frauds" which rejects evidence of any oral statement in contradiction of the terms of a written agreement.

Without questioning the good faith of the participants in the present transaction, the adoption of the rule urged by appellee would permit any maker or endorser of a bank note to conspire with an officer of the bank to falsify the records of the bank for the purpose of deceiving the bank examiner and any others who might be affected thereby.

For all of the above reasons, this Court concludes that the statements attributed to the president of appellant are not as a matter of law a sufficient defense to the suit upon the note and that therefore there is no evidence to support the verdict of the jury and judgment of the Trial Court which must be reversed.

The foregoing renders the remaining issues moot.

The judgment of the Trial Court dismissing plaintiff's suit and awarding judgment against plaintiff is reversed, plaintiff's counter-suit is dismissed and the cause is remanded for retrial of plaintiff's suit upon the note. Costs of the appeal are taxed against appellee.

Reversed and Remanded.

LEWIS, J., concurs.

CONNER, J., concurs in separate opinion.

CONNER, Judge, concurring.

I reluctantly concur in the conclusion reached by the majority, but disagree with the holding in several respects.

First, I believe this court (and by denial of appeal, the supreme court) has already recognized the doctrine of promissory fraud in *Brungard v. Caprice Records,* 608 S.W.2d 585 (Tenn.App.1980). Then Judge Drowota stated that "[i]t is apparent ... that the Tennessee Supreme Court *will* adopt the majority rule *if the party alleging promissory fraud produces evidence supporting the allegation,*" 608 S.W.2d at 590 (emphasis supplied). Finding that such evidence existed in *Brungard,* this court expressly found that the plaintiff's recovery could be predicated on promissory fraud. *Id.*

However, I must agree with the majority's finding that the supreme court has indicated an unwillingness to apply the doctrine except in those cases where there is direct proof of a misrepresentation of actual *present* intention. There seems to be considerable reluctance on the part of the court to infer a false intent from the subsequent failure to follow through on a promise. *See Fowler v. Happy Goodman Family,* 575 S.W.2d 496, 499 (Tenn.1978). In *Brungard* there was overwhelming evidence that the defendant knew its statements regarding future intent were false at the time they were made. 608 S.W.2d at 588–590. Such is not the situation here.

Because of the ambiguous nature of the alleged declarations of the bank president, Mr. Brown, inducing Mr. Petty to sign the guaranties, I must concur that there is insufficient evidence of the type required by *Fowler* and *Brungard* to find that the statement of intention was false when made. However, I do so with great reluctance, because I would be comfortable with a much more liberal approach to the doctrine of promissory fraud and the evidentiary requirements thereof. There are inherent and often insurmountable problems in proving "state of mind" at the time the repre-

sentation is made as to its then truthfulness or falsity. Therefore, I would favor a construction that would allow an inference of original false intention to be made from evidence of subsequent actions. Assuming such intent was inferred by the jury in this case, I would be inclined to affirm the verdict. Nevertheless, given the language in *Fowler,* I must agree with the majority that this does not appear to be the type of fact situation in which the supreme court would apply the doctrine of promissory fraud.

Moreover, I have trouble rationalizing the present approach to promissory fraud with the standards applied by the Tennessee courts in cases of negligent misrepresentation. This court has stated:

> In commercial transactions the law has recognized a less stringent standard of liability for fraudulent misrepresentations than the common law action for deceit. One who, in the course of his business, profession, or employment, or during a transaction in which he had a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon such information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. *Jasper Aviation, Inc. v. McCollum Aviation, Inc.,* 497 S.W.2d 240 (Tenn.1972); *Hunt v. Walker,* 483 S.W.2d 732 (Tenn.App.1971). *This standard of liability substitutes a reasonable care standard for the common law scienter requirement. In other words, in business transactions, a defendant can be held liable for negligent misrepresentations.*

*Haynes v. Cumberland Builders,* 546 S.W.2d 228, 232 (Tenn.App.1976) (emphasis supplied).

Thus, we have recognized that knowledge of falsity and fraudulent intent are not necessary to prove a cause of action under a theory of negligent misrepresentation. Yet we cling to those requirements and require strict proof of their existence if a similar set of facts is labeled "promissory fraud."

For instance, in *Brungard* it was stated that the plaintiff sued "on the tort of false misrepresentation in a commercial transaction" and therefore the doctrine of negligent misrepresentation was said to apply. 608 S.W.2d at 588. As for misrepresentation of *existing fact,* the court emphasized a reasonable care standard. However, when the discussion turned to misrepresentations of *intention,* the court considered liability in light of the requirements of promissory fraud and at least implicitly required a showing of false intent at the time the promises were made.

If the general theory in such a case is that of "negligent misrepresentation," what logic is there in distinguishing between misrepresentation of existing fact and misrepresentation of future intent? In either case, the statements involve, in the words of *Haynes,* "false information for the guidance of others in their business transactions" resulting in "justifiable reliance upon such information." 546 S.W.2d at 232. In the instant case, assuming that Mr. Brown told Mr. Petty he would never be held responsible under the surety agreement as the jury found, could it not be said that at a minimum Mr. Petty was negligent in making such a representation? Surely, he would have known that if the son defaulted, with the father's guaranty in the file the bank would have no choice but to attempt to enforce it. In the area of "fraudulent and/or negligent misrepresentations" I believe existing precedent is confusing. I hope the supreme court will re-address the entire subject lest we sink into a legal quagmire that could destroy the fairness and credibility of our decisions in cases of this type.

The majority also indicates that the doctrine of promissory fraud should not apply in this case because it would, in effect, be contrary to the parol evidence rule. This might be true if this were purely a contract case. However, this action also involved a counter-claim sounding in the tort theory of fraudulent misrepresentation. The parol evidence rule "has no application to a case involving a fraudulent misrepresentation

which induces the execution of a contract." *Haynes,* 546 S.W.2d at 231; *see also Brungard,* 608 S.W.2d at 588. However, even with the parol statements admitted into evidence, they are, as already noted, insufficient to meet the test of *Fowler.*

In summary, I believe we have previously recognized the doctrine of promissory fraud, but existing caselaw in Tennessee would apply the doctrine on an extremely limited and conservative basis. While I disagree with this approach, I am bound by *stare decisis* and must concur in the final result reached by the majority as to the first issue on appeal.

As to the second and third issues, I concur in the majority opinion in its entirety.