**BIODYNAMIC TECHNOLOGIES, INC.,**
**a Florida corporation,**

v.

**CHATTANOOGA**
**CORPORATION, Defendant.**

**No. 85–6069–CIV–EPS.**

United States District Court,
S.D. Florida,
Miami Division.

April 23, 1987.

---

Iva Marcus, Fort Lauderdale, Fla., for plaintiff.

Robert D. McIntosh, Fort Lauderdale, Fla., for defendant.

## MEMORANDUM OPINION & ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

SPELLMAN, District Judge.

This CAUSE comes before the Court on Defendant's, CHATTANOOGA CORPORATION, Motion for Summary Judgment as to Count IV of Plaintiff's Amended Complaint and also as to the appropriate measure of damages to be awarded in a case involving the misappropriation of a trade secret. This Court previously issued one Memorandum Opinion in this case on August 19, 1986, 644 F.Supp. 607, wherein Plaintiff's Motion for Summary Judgment as to Counts III, VII and X of the Amended Complaint was granted. Counts I, II, V, VI and VIII have all been dismissed previously. All that remains in this case, outside of a final determination of damages, are the issues presented by Defendant's Motion.

This Court is aware that on a Motion for Summary Judgment, the Movant must demonstrate that there exists no dispute as to any material fact in the case. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); Fed.R. Civ.P. 56(c). This "burden on the moving party may be discharged by 'showing'—

that is, pointing out to the District Court— that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* — U.S. —, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Of course, the Court must view the evidence in the light most favorable to the nonmoving party. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608. Finally, it is now certain that:

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.... [There is] no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.... Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex,* 106 S.Ct. at 2552–53.

After reviewing the Motion, the Plaintiff's Response and the file in the above-named case, the Court finds that there are no disputed facts and that the Defendant is entitled to judgment on its Motion as a matter of law.

## DISCUSSION

Defendant's Motion for Summary Judgment as to Count IV of Plaintiff's Amended Complaint is GRANTED and the Count is hereby DISMISSED.

Count IV of the Amended Complaint asserts a cause of action for fraud. Plaintiff's Amended Complaint alleges that the Defendant made a material misrepresentation to the Plaintiff relating to the existence of a licensing agreement between the parties and/or their intent to perform an oral licensing agreement; that in reliance on this alleged misrepresentation Plaintiff turned over to Defendant certain confidential information, including its patent application; that at the time the alleged misrepresentation was made, Defendant did not intend to memorialize any agreement; and that Plaintiff was harmed as a result by Defendant's subsequent conduct. *See* Plaintiff's Amended Complaint at 11, 12, 13.

■ Defendant asserts that Tennessee law, which governs this action, does not recognize a cause of action for "promissory fraud" wherein a party, such as Plaintiff here, alleges a misrepresentation of intention to perform an act in the future, or a promise without intent to perform. Defendant's position is that Tennessee is in the minority of jurisdictions which will recognize a cause of action for fraud based *only* on the misrepresentation of a present or past material fact. Defendants rely on *Fowler v. Happy Goodman Family,* 575 S.W.2d 496 (Tenn.1978), wherein the Supreme Court of Tennessee reiterated its adherence to the minority view. Defendants admit, however, that there is language in *Fowler* which expresses a willingness on the part of Tennessee to adopt a rule which would allow a cause of action for promissory fraud, but that in that event, "in order for actionable fraud to be based upon a promise of future conduct, it must be established that such a promise or representation was made with the intent not to perform." *Fowler,* 575 S.W.2d at 499. Any willingness is therefore limited "to those cases where the statement of intention is shown to be false when made (i.e., a misrepresentation of actual present intention) by evidence other than subsequent failure to keep the promise or subjective surmise or impression of the promisee." *Farmers & Merchants Bank v. Petty,* 664 S.W.2d 77, 80–81 (Tenn.Ct.App.1983).

Plaintiff's Response regarding Count IV is void of any supporting material. Plaintiffs urge this Court to deny Defendant's Motion because there are disputed questions of fact with reference to Defendant's intention at the time it induced Plaintiff to impart its trade secrets and confidential information. Plaintiffs argue that Count IV clearly sets forth a cause of action for

fraud in that it is alleged that Defendant, at the time it represented to Plaintiff that it would keep its patent application in strict confidence, clearly intended to wrongfully use the patent application to unfairly compete with Plaintiff, and that since there was never a present intention to enter into a license agreement, the same is a misrepresentation of an existing fact. Plaintiffs assert that even assuming their Amended Complaint is alleging a cause of action for promissory fraud, the same is actionable under Tennessee law. Plaintiffs rely on *S & H Computer Systems, Inc. v. SAS Institute, Inc.*, 568 F.Supp. 416 (M.D.Tenn. 1983), wherein a federal judge sitting in diversity determined that Tennessee would now recognize a cause of action for promissory fraud. With all due respect to that court, this Court cannot help but recognize that despite expressing a "willingness" to adopt the cause of action, the Tennessee Supreme Court has yet to do so, and that even where it has been recognized, for example in *Farmers & Merchants Bank, supra*, the party asserting the cause must establish the misrepresentation of actual present intention by evidence other than subsequent failure or their subjective impression. *Farmers & Merchants Bank*, 664 S.W.2d at 81.

The plain language of Plaintiff's Amended Complaint alleges that Defendant made material misrepresentations to Plaintiff relating to the existence of a licensing agreement between the parties and/or their intent to perform an oral licensing agreement. This amounts to no more than an action based on "the misrepresentation of intention or a promise without intent to perform." *Fowler*, 575 S.W.2d at 499. To be actionable "it must be established that such a ... representation was made with the intent not to perform." *Id.* And, as already indicated, it must be "by evidence other than subsequent failure to keep the promise or subjective surmise or impression" of the Plaintiff. *Farmers & Merchants Bank*, 664 S.W.2d at 81. Plaintiff's Response simply fails to meet this burden. "[I]t is incumbent upon the party asserting fraud, when confronted by a motion for summary judgment, to produce some com-

petent and material evidence legally sufficient to support his claim or defense." *Fowler*, 575 S.W.2d at 499.

■ Plaintiff's assert in their Response that the representations were made without any present intent to perform. But this Response, in and of itself, "is legally insufficient and wholly fails to establish by any competent and material evidence that the ... representations of [Defendants] as to their future conduct were made without any intention on their part to perform." *Id.* There is nothing to establish or substantiate Plaintiff's position other than their subjective impression coupled with Defendant's failure to perform, which is insufficient under Tennessee law to support Plaintiff's claim. Accordingly, summary judgment against Plaintiff is mandated by Rule 56(c) and the Defendant's Motion is GRANTED for Plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [their] case, and on which [the Plaintiff] will bear the burden of proof at trial." *Celotex*, 106 S.Ct. at 2553.

Defendant's Motion also argues that, assuming the Plaintiff is entitled to relief for Defendant's alleged misappropriation of the Plaintiff's trade secrets pursuant to Counts III, VII and X of the Amended Complaint upon which this Court has granted partial summary judgment in the Plaintiff's favor, the appropriate measure of the Plaintiff's damages is the value of the trade secret as determined by the "established royalty method." *See* Defendant's Motion for Summary Judgment at 4.

This Court agrees. On the facts of this case, it is an amount which was agreed to by the Plaintiff in the proposed licensing agreement it sent to the Defendant. It is the amount that, in this Court's opinion, reflects what the Plaintiff itself believed to be "the actual value of what has been appropriated." *Vitro Corp. v. Hall Chemical Co.*, 292 F.2d 678, 683 (6th Cir.1961).

There is no question that there exists various acceptable methods to measure the damages in a case such as that presented here. There are basically three broad cate-

gories of remedies courts employ. One method looks to whether the parties have themselves agreed to a remedy which is capable of a factual determination by the Court. Such situations arise, for example, where the parties have entered into or negotiated a royalty agreement. In such a situation, the Court is guided by the value the parties themselves assigned to the appropriated information. Accordingly, where the parties have reached an "agreement in principle", although it is not consummated, the court has allowed the "established royalty" to be the appropriate measure of damages. *Vitro Corp. v. Hall Chemical Co.*, 292 F.2d 678 (6th Cir.1961). Or where there have been "no solid conditions governing the application of an 'agreement in principle,'" a "reasonable royalty" may be the basis for recovery. *Id.* at 683; *University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 536–39 (5th Cir.1974); *see generally* Annotation, *Proper Measure and Elements of Damages for Misappropriation of Trade Secret*, 11 A.L.R.4th 12 (1982). The other two acceptable methods look either to the Plaintiff's lost profits or to the Defendant's gains or unjust enrichment. *See Tri-Tron International v. Velto*, 525 F.2d 432, 437 (9th Cir.1975) (court looked to loss of profits as a measure of damages); *Greenberg v. Croydon Plastics Co., Inc.*, 378 F.Supp. 806, 817 (E.D.Pa.1974) (defendant's profits).

■ "The case law is plentiful, but the standard for measuring damages which emerges is very flexible." *University Computing Co.*, 504 F.2d at 535. Nevertheless, some guiding principles emerge. Every case requires a flexible and imaginative approach, *Id.* at 538, and "each case is controlled by its own peculiar facts and circumstances." *Enterprise Mfg. Co. v. Shakespeare Co.*, 141 F.2d 916, 920 (4th Cir.1944). Where the parties have agreed to the value of the trade secrets, either in a royalty agreement, a licensing contract, or an "agreement in principle," such that the damages will be subject to exact measurement, that course should be followed. *Saco-Lowell Shops v. Reynolds*, 141 F.2d 587, 598 (4th Cir.1944); *Vitro Corp. v. Hall Chemical*, 292 F.2d 678, 682–83 (6th Cir. 1961); *University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 538 (5th Cir.1974). In this situation, the Court is telling the Plaintiffs that they "are entitled to recover merely what would have been theirs if [the Defendants] had done what [they] should have done," i.e., perform according to the proposed licensing agreement drafted and signed by Plaintiff and forwarded to Defendant. *Saco-Lowell Shops*, 141 F.2d at 598. Where the damages are not subject to such exact measurement, the Plaintiff is generally afforded an opportunity to prove its damages, either by establishing its lost profits as a result of the Defendant's misappropriation, or recovering the Defendant's gains. *University Computing Co.*, 504 F.2d at 539; *Saco-Lowell Shops*, 141 F.2d at 598. Assuming there has been no "agreement in principle," or a final agreement, and Plaintiff fails to establish any basis upon which to award lost profits or the Defendant's gains, courts have resorted to a determination, by way of a "reasonable royalty," of what the parties "would have agreed to as a fair price for licensing the defendant to put the trade secret to the use the defendant intended at the time the misappropriation took place." *University Computing Co.*, 504 F.2d at 539; *see also Enterprise Mfg. Co.*, 141 F.2d at 920 (reasonable royalty used where apportionment of profits and damages cannot be accomplished).

■ In this case, this Court is of the opinion that there has been an "established royalty" enunciated in an "agreement in principle" between the parties. This is the amount expressly stated in the proposed licensing agreement which Plaintiff drafted and signed and then forwarded to the Defendant, to wit, $15,000 as a down payment coupled by a royalty in the amount of 5% of the net sales price of the product sold by the Defendant or its subsidiaries. *See License Agreement* at 2. The Court cannot help but recognize that, at the time of negotiations, this is what the parties agreed to as a fair price.

This result comports more fully with this Court's prior Memorandum Opinion in this

case, wherein the Court made a finding that an agreement had been negotiated, incorporating specific terms. *See* Memorandum Opinion, August 19, 1986 at 10 (Plaintiff and Defendant found to have negotiated specific terms of a license agreement; pursuant to negotiations, Plaintiff forwarded to Defendant a proposed license agreement). The Court is also of the opinion that this result is the more accurate result on the facts of this case. The terms in the proposed agreement were negotiated. This aids the Court in making a factual determination, rather than having the Court engage in a calculation of Plaintiff's lost profits, which must involve some speculation as to what the Plaintiff's sales could have been but for the Defendant's conduct. In this regard, the Court cannot help but note that Exhibit A to Plaintiff's Response, entitled "Plaintiff's Lost Profits", consists only of unsubstantiated assertions. *Cf. Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).[1]

---

1. This Order in no way addresses the question of what the appropriate measure of damages would be in this case in the absence of their being an "agreement in principle" pursuant to which specific terms had been negotiated. Nor does the Order address the question of punitive damages.