IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 20, 2004 Session

## JOE RANKIN AND WIFE, BRENDA RANKIN v. LLOYD SMITH

**An Appeal from the Chancery Court for Dyer County**
**No. 02C210      J. Steven Stafford, Chancellor**

---

**No. W2003-00992-COA-R3-CV - Filed August 23, 2004**

---

This is a breach of contract case. The plaintiffs entered into a contract to sell their home and farm to the defendant. On the scheduled closing date, the defendant refused to purchase the property. The plaintiffs sold the property to a third party for substantially less than the amount the defendant had agreed to pay. In April 2002, the plaintiffs filed the instant lawsuit against the defendant for breach of contract. The defendant argued that he was fraudulently induced into signing the contract, because the parties had a verbal understanding that the contract would not be enforced. The trial court granted summary judgment in favor of the plaintiffs. The defendant now appeals. We affirm, finding that the defendant alleges promissory fraud, that evidence of the parties' verbal agreement is inadmissible under the parol evidence rule, and that the evidence submitted by the defendant does not create a genuine issue of material fact regarding fraudulent inducement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Thomas H. Strawn, Dyersburg, Tennessee, for the appellant, Lloyd Smith.

Timothy Boxx, Dyersburg, Tennessee, for the appellees, Joe Rankin and wife, Brenda Rankin.

### OPINION

This is a case of two former friends. On August 31, 2000, Plaintiffs/Appellees Joe Rankin ("Rankin") and his wife, Brenda Rankin (collectively "the Rankins"), executed a contract for the sale of their home and the 72-acre farm on which it was situated to Defendant/Appellant Lloyd Smith ("Smith") for $225,000. Under the purchase contract, the closing date was to be 120 days from the date of the execution of the contract. On that date, the entire purchase price was to be paid in full, and Smith was to take possession at the closing. The contract also gave Smith permission to inspect the property at any time, and prohibited the Rankins from marketing the property to third parties.

On the scheduled date, Smith did not tender the purchase price. Subsequently, the Rankins sold the property to a third party for $155,000.

On April 26, 2002, the Rankins filed the instant lawsuit against Smith for breach of contract. On May 7, 2002, Smith filed his answer, admitting that he had signed the contract in question, but denying all other material allegations of the complaint. Discovery ensued.

On December 6, 2002, the Rankins took Smith's deposition. In his deposition, Smith admitted that he had executed the purchase contract with the Rankins. He explained, however, that the purchase contract with the Rankins was part of a three-party transaction involving another purchaser, Jimmy Wilson ("Wilson"). Smith said that Wilson wanted to purchase the property from the Rankins, but he did not have the money at that time. Smith explained that Wilson expected to receive approximately $400,000 from a lawsuit in which he was involved, but that it would be several months before he would have the money. Therefore, in order to facilitate Wilson's acquisition of the Rankins' property, Smith signed the contract with the Rankins to purchase the property for $225,000, and at the same time he signed a contract with Wilson to sell the property to Wilson for the same price. Smith testified that, according to the agreement, when the property was transferred to Wilson, Smith would retain "about 25 acres or so" of the farm land. Smith said that keeping the 25 acres would make it "worth [his] while" to enter into the transaction. Smith said that Joe Rankin was aware of the agreement with Wilson. As for Smith's contract with the Rankins, Smith testified that the parties agreed that it would not be enforced. Smith asserted that Rankin, with whom Smith had been friends for some time, induced him into signing the purchase contract by agreeing that "it would not be no count." In his interrogatory answers, Smith again indicated that Rankin induced him into signing the contract "by stating that [the] contract was not meant to be enforced." The record does not state this, but we can only surmise that on the appointed date, Wilson was unable or unwilling to perform his part of this convoluted transaction.

On January 24, 2003, the Rankins filed a motion for summary judgment. The Rankins argued that the undisputed facts established the existence of a valid contract, and that there was insufficient evidence to support Smith's defense of fraudulent inducement. The Rankins also contended that any evidence of the parties' oral agreement that the contract "would be no count" was ambiguous and was inadmissible under the parol evidence rule. In response, Smith argued that the Rankins were not entitled to summary judgment, because a genuine issue of material fact existed as to whether he was fraudulently induced into signing the contract. On March 25, 2003, the trial court granted the Rankins' motion for summary judgment, concluding that "there is no genuine issue as to any material fact and that the [Rankins] are entitled to a judgment as a matter of law." From that order, Smith now appeals.

On appeal, Smith argues that the trial court erred in granting the Rankins summary judgment, because summary judgment is not appropriate where fraud is at issue. He claims that evidence of his collateral agreement with the Rankins that the contract would never be enforced shows that he was fraudulently induced into entering into the transaction. He concedes that the evidence is not conclusive, but contends that it is sufficient to create a genuine issue of material fact on the issue of

fraud. In response, the Rankins argue that the alleged collateral agreement would be an oral agreement between the parties that contradicts the written contract; thus, evidence of it is inadmissible under the parol evidence rule. Even if consideration of the oral agreement as evidence was permissible, the Rankins claim, summary judgment in their favor was appropriate.

We review the trial court's grant of summary judgment *de novo* with no presumption of correctness. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences. *Warren*, 954 S.W.2d at 723 (quoting *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Once the moving party demonstrates that no genuine issues of material fact exist, the non-moving party must demonstrate, by affidavits or otherwise, that a disputed issue of material fact exists for trial. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993).

In *Farmers & Merchants Bank v. Petty*, 664 S.W.2d 77 (Tenn. Ct. App. 1983), the defendant signed a note with the plaintiff bank for about $35,000 to cover an overdraft that had accrued on his son's bank account.[1] The father did not pay on the note, and the bank sued the father to recover the amount due. As a defense, the defendant father asserted that the bank president fraudulently induced him into signing the note. The defendant father said he had known the president of the bank all of his life. He asserted that the bank president convinced him to sign the note to get the bank president "off the hook" with bank examiners who were coming to the bank. The defendant father testified that the bank president guaranteed him that he would never have to pay the note. *Petty*, 664 S.W.2d at 79. At the conclusion of the jury trial, the jury returned a verdict in favor of the defendant, finding specifically that the defendant father executed the note "as a result of relying on false or fraudulent statements and misrepresentations . . . ."[2] *Id.*

The bank appealed the jury verdict, claiming that there was insufficient evidence of fraud to invalidate the note upon which the suit was based. The appellate court agreed and reversed the jury verdict. The appellate court recognized that, "[a]s a general rule, summary judgment is not an appropriate procedure for the disposition of [a claim of fraud]." *Id.* at 80. The court reasoned, however, that the party asserting fraud must "produce some competent and material evidence legally sufficient to support his claim or defense." *Id.* It noted that a party asserting promissory fraud, that is, making a promise without intent to perform, must show that the person committing the fraud

---

[1] The son also signed the note and was a defendant in the case.

[2] The defendant father also filed a counterclaim against the bank for damages relating to the fraudulent inducement. In the instant case, Smith did not file a counterclaim against the Rankins.

made a promise as to future conduct without any present intention to perform.[3]  In ***Petty***, the president of the bank essentially made a promise that the bank would not enforce the note against the defendant father.  Such a promise, the court held, was not sufficient to negate the obligation of the written instrument under Tennessee law.  Moreover, ***Petty*** found that evidence of an oral promise not to enforce a written agreement was inadmissible parol evidence.  ***Id.*** at 81.  The court reasoned:

> The rule that a written contract must prevail over previous or contemporaneous contradictory representations is not merely a rule of evidence, but one of substantive law. . . .  Terms of a note cannot be varied by oral proof. . . .  Parol evidence of an oral agreement alleged to have been made at the time of the drawing, making or indorsing of a bill or a note cannot be permitted to vary, qualify, contradict, or add to or subtract from the absolute terms of the written contract. . . .  Proof is inadmissible to show an oral agreement that the maker of a note was not to be personally bound. . . .  Where a note is an unconditional promise on its face, parol evidence is inadmissible to show an oral condition.

***Id.*** (citations omitted.)  Thus, ***Petty*** held that parol evidence of an oral agreement not to enforce the contract was inadmissible to show that the defendant father was fraudulently induced into signing the contract.  ***Id.***

In the instant case, Smith sought to introduce into evidence his own deposition testimony that he and Joe Rankin orally agreed that the real estate contract "would not be no count."  Smith appears to argue that this was a promise not to enforce the purchase contract.  He explained that the parties' intent was that Wilson would ultimately buy the Rankins property, and Smith would receive 25 acres for his involvement in the transaction.  Smith submitted no documentary evidence to support his assertion.  Under ***Petty***, this parol evidence of an oral agreement is inadmissible to contradict the written contract for sale between the parties.

Even if the parol evidence submitted by Smith were admissible, it is insufficient to show fraudulent inducement.  To show fraudulent inducement to contract, a party must show "(1) a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; [and] (5) an injury resulting from the reliance."  ***Lamb v. MegaFlight, Inc.***, 26 S.W.3d 627, 630 (Tenn. Ct. App. 2000).  Smith's statement that the parties allegedly intended that his purchase contract with the Rankins "would be no count" was ambiguous at best.  It certainly does not show that a statement was made concerning

---

[3]The intermediate appellate court in ***Petty*** explained that the Tennessee Supreme Court had not adopted the doctrine of promissory fraud, but that it had expressed a willingness to consider adopting the doctrine "in a proper case where justice demands."  ***Petty***, 664 S.W.2d at 80-81 (quoting ***Fowler v. Happy Goodman Family***, 575 S.W.2d 496 (Tenn. 1978) (quoting ***Bolan v. Caballero***, 417 S.W.2d 538, 541 (Tenn. 1967))).

a fact material to the transaction, or that Smith's reliance on the Rankins' alleged representation was reasonable under the circumstances. Moreover, it contradicts the remainder of Smith's deposition testimony. Smith's own testimony shows that when he and the Rankins signed the purchase agreement, they fully intended to abide by it. Smith testified that, by becoming involved in the transaction, he would benefit by obtaining approximately 25 acres of land at virtually no financial cost to himself, and that acquiring the land would be the consideration for his participation in the overall transaction. The contract for sale between Smith and the Rankins shows that Smith was to buy the entire property, and Smith testified that he had an identical contract with Wilson to sell the property to Wilson, less the 25 acres. Wilson was not mentioned in the contract for sale between Smith and the Rankins, and Smith testified that the Rankins were not mentioned in his contract with Wilson. Apparently, subsequent events prevented Wilson from purchasing the property from Smith. This has no effect on the contract at issue here. There being insufficient evidence to create a genuine issue of material fact regarding whether Smith was fraudulently induced into signing the contract, the contract must be enforced according to its plain terms. Thus, the trial court properly granted summary judgment in favor of the Rankins.

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellant Lloyd Smith and his surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE