# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
December 15, 2011 Session

## JAMES H. HARRIS, III v. EDWARD K. WHITE, III

### Appeal from the Chancery Court for Davidson County
No. 071972IV      Russell T. Perkins, Chancellor

---

### No. M2011-00992-COA-R3-CV - Filed May 16, 2012

---

This is a dispute between two attorneys.  Attorney 1 hired attorney 2 to represent him.  Attorney 2 sued attorney 1 for attorney fees, and attorney 1 counterclaimed for legal malpractice.  The trial court granted attorney 2 summary judgment on the attorney fee claim, and a jury found in favor of attorney 2 on the legal malpractice claim.  On appeal, attorney 1 challenges both decisions on multiple grounds.  Finding no error, we affirm the judgment of the trial court in all respects.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Edward K. White, III, Franklin, Tennessee, Pro Se.

Darrell Gene Townsend, J. Thomas Martin, and Richard L. Wommack, II, Nashville, Tennessee, for the appellee, James H. Harris, III.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Attorney Edward White did legal work for Frank Burnett and Dennis Joslin 2000, Inc. ("Joslin 2000").  In January 2006, White filed a lawsuit in Williamson County, Tennessee, against Burnett and Joslin 2000 to obtain attorney fees alleged to be owed to White.  On January 23, 2006, in response to a "joint motion for ex parte entry of agreed judgment," the trial court entered an agreed final judgment against the defendants in favor of White in the

amount of $450,000.[1]   Joslin 2000 and shareholders in Joslin 2000 (through attorneys) filed motions for relief from the final judgment in March 2006.

In late April 2006, White engaged attorney James Harris, who had represented White previously, to represent him in the Williamson County case and to oppose the setting aside of the judgment White had obtained from the court.  Harris represented White at a hearing on April 24, 2006.  At this hearing, the court took the matter under advisement and ordered White to submit (within five days) "additional proof confirming that he did not represent any of the parties at the time the Judgment was granted."  On June 2, 2006, the court in Williamson County entered an order vacating the judgment and imposing sanctions against White.  The court subsequently denied White's motion to alter or amend its order vacating the judgment.

Harris and White did not enter into a written agreement concerning attorney fees until August 30, 2006.  Harris presented White with the following fee agreement letter:

> This letter will reduce to writing our current fee agreement.  If after reviewing it you have no further questions about the terms of my representation, please sign the extra copy enclosed.
>
> I have undertaken and will continue to undertake the following work on your behalf: to represent your interests in litigation currently pending in Williamson County, Tennessee, Civil Action No. 06044.  Unless otherwise provided, all future work will be done in accordance with this fee letter agreement.
>
> You acknowledge and agree that as of 18 July 2006, you owed me a total of $11,240.00 for services rendered and expenses incurred.
> . . .
>
> The hourly rate for my legal services is Three Hundred Dollars ($300.00).  I will also charge for expenses incurred on your behalf.  Generally, I will send you at least monthly an itemized statement of fees and expenses associated with my services.  Payment is due upon demand or at the time you or I collect money on your claim, whichever comes first.
>
> You agree that any failure to pay fees or expenses or make deposits when demanded will be cause for my termination of this agreement and shall entitle

---

[1] The motion was signed by White and Burnett, and the agreed order was signed by White, Burnett individually, and Burnett as director and president of Joslin 2000.

me to cease work without further notice. It is understood that you may terminate my services at any time for any reason orally or in writing and my fees will end at the moment of termination of my services.

If I have to bring suit against you to collect any balance owed, you agree to pay as attorney's fees an additional amount of 33.33% of the balance owed or reasonable attorneys fees and expenses, whichever is less. You also agree that I may bring any legal action to enforce the terms of this agreement in the courts of Nashville, Davidson County, Tennessee.
. . .

If the above terms are acceptable, please sign and return one of the enclosed copies of this letter. I look forward to working with you.

White signed the letter on August 30, 2006, under the statement that "I understand and accept the terms of this Agreement."

White sent Harris an e-mail terminating his services in November 2006 but rehired him the same day. In December 2006, Harris filed a motion on White's behalf in Williamson County asking that the order vacating the judgment be revised to apply only against Joslin 2000 and not against Burnett. The court granted this motion on January 23, 2007.

White also hired Harris to file an "interpleader complaint" in Dyer County chancery court in November 2006 against Darrell Sells. Sells had a case pending in the chancery court of Dyer County against Burnett claiming that Burnett had promised to give Sells Burnett's share of distributions from an investment in Millenium Properties of the West, LLC ("the Millenium Funds"). In this pending case, the chancery court had enjoined Burnett from disposing of the Millenium Funds. According to White's interpleader lawsuit, Burnett had promised to give him the Millenium Funds as a lump-sum, non-refundable attorney fee and had, in June 2005, wired the money to White. At the chancery court's instruction, White had paid these funds, in the amount of $797,397.15, into the registry of the court in November 2005. In his interpleader complaint, White asked the court to return the Millenium Funds to him. In March 2007, White filed a motion for an order directing disbursement of the funds held in the registry of the court.

On May 9, 2007, Harris sent White a memorandum entitled "estoppel letter." The memorandum states as follows:

As we discussed on the phone, the purpose of this memorandum is to set forth and to acknowledge of [sic] your agreement as to the amount of fees and expenses currently that you currently [sic] owe me for legal services rendered.

As of 30 April 2007 our fee agreement was in full force and effect, I was engaged as your lawyer in various litigation matters, and you owed me $41,533.47 for those services. Also as of that date, you had accepted my legal services and had found them to be a satisfactory discharge [of] all of my professional responsibilities to you as a client.

If you agree with the statements that I have made in this Estoppel Letter, and if you desire that I therefore continue to serve as your lawyer, please so indicate by signing below where appropriate and returning the Estoppel Letter to me.

White signed the memorandum.

On June 5, 2007, after a hearing the Dyer County court denied White's motion for an order disbursing funds and denied the defendant's motion to dismiss. White terminated Harris's services as his attorney.

*Current lawsuit*

Harris filed this lawsuit against White on August 30, 2007, for breach of contract and demanded judgment in the amount of $46,975.85 plus attorney fees and costs. White counterclaimed and asserted waiver and lack of consideration as defenses. White alleged that he and Harris "had an oral agreement providing in part that the letter dated 30 August 2006 would not be an enforceable contract" due to lack of consideration and that "no legal fees are owed because plaintiff's legal representation did not result in defendant receiving any money from plaintiff's legal representation." White also counterclaimed for legal malpractice.

On August 7, 2008, Harris filed a motion for partial summary judgment with respect to the issues of White's liability to him and the amount of that liability. Harris filed supporting documents, including his own affidavit and White's response to Harris's requests for admissions. In opposing Harris's motion for partial summary judgment, White submitted his own affidavit, which includes the following statements:

The "fee letter agreement" does not set forth the terms of defendant's engagement of plaintiff. At the time of signing the parties understood that the "fee letter agreement" was void and of no legal effect. Plaintiff represented

-4-

to defendant that the "fee letter agreement" would have no legal effect between the parties as it was solely for the purpose of satisfying the requirements of his partners. Since the "fee letter agreement" was signed without any consideration given, defendant was confident that the "fee letter agreement" was void when executed, reasonably relied on the representation and agreed to accommodate plaintiff.

The "fee letter agreement" does not reduce to writing the fee agreement that existed between plaintiff and defendant. In March, 2006, plaintiff agreed that defendant would never be personally liable for his attorneys fees, but that plaintiff would obtain his fees from the various liable parties in the lawsuit in which defendant had already obtained final judgments and in which there was a contract provision for attorneys fees to be paid to defendant's attorneys.
. . .

The court should note that by its terms [the estoppel letter] states that it is an acknowledgment of an agreement (line 2) between the parties, not an estoppel letter. It is evident from the text that there is no consideration given for the agreement or the acknowledgment, which renders the document legally void. More importantly, defendant does not have a record of this document and believes the signature was computer or electronically generated by plaintiff. Defendant demands that plaintiff produce an original signature version at trial, if there is such a version.

The court concluded that there were no genuine issues of material fact and that Harris was entitled to judgment as a matter of law on his breach of contract claim.[2] White's counterclaim was not affected by the granting of partial summary judgment to Harris.

White's malpractice counterclaim was tried before a jury in January 2011, and the jury returned a verdict in favor of Harris. The jury found that there was no negligence by Harris with respect to the Williamson County case and that, although Harris was negligent with respect to the Dyer County case, the case would not have resulted in a collectible judgment for White even without Harris's negligence. The trial court entered judgment on the jury's verdict, dismissed White's counterclaim, and taxed all costs to White. White filed motions

---

[2]The chancery court had previously referred the case to the NBA Fee Dispute Committee pursuant to Rule 53 of the Tennessee Rules of Civil Procedure, but the court did not consider the panel's decision in ruling on Harris's motion for partial summary judgment. The panel had concluded that the August 30, 2006 fee agreement was a valid contract and rejected all of the defenses raised by White; the panel also found White's allegations of gross negligence to be without merit.

for judgment and for a new trial. On April 1, 2011, the trial court denied these motions and awarded Harris the balance of his attorney fees and discretionary costs.

*Issues on appeal*

White raises five issues on appeal. The first two issues relate to the court's grant of partial summary judgment to Harris on his breach of contract claim against White: (1) whether the trial court erred in granting partial summary judgment to Harris; and (2) whether the trial court erred in the amount of attorney fees and costs awarded to Harris. The other three issues address the jury trial and verdict: (3) whether the trial court erred by giving the jury a verdict form with an erroneous question; (4) whether the trial court erred by failing to submit certain special instructions to the jury; and (5) whether the trial court erred by not granting White a judgment in his favor or granting him a new trial.

ANALYSIS

1.

The first issue concerns the propriety of the trial court's grant of partial summary judgment as to Harris's breach of contract claim.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson,* 100 S.W.3d 202, 205 (Tenn. 2003). In reviewing a summary judgment, this court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown,* 955 S.W.2d 49, 50 (Tenn.1997). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz,* 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we must determine whether factual disputes exist. *Byrd v. Hall,* 847 S.W.2d 208, 211 (Tenn. 1993). If a factual dispute exists, we must determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Id.; Rutherford v. Polar Tank Trailer, Inc.,* 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). To shift the burden of production to the nonmoving party who bears the burden of proof at trial, the moving party must negate an element of the opposing party's claim or "show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.,* 270 S.W.3d 1, 8–9 (Tenn. 2008).

In support of his motion for summary judgment, Harris submitted the fee agreement letter, the estoppel letter, his own affidavit, and other documents, successfully shifting the burden of production to White to negate the breach of contract claim. In challenging the trial court's grant of summary judgment, White makes two arguments: that the fee agreement lacked consideration; and that White, by his affidavit, created issues of material fact regarding his defense of fraudulent inducement.

We cannot agree with White's argument that the fee agreement lacked consideration. Pursuant to Tenn. Code Ann. § 47-50-103, a written contract signed by the party to be bound is "prima facie evidence of a consideration." The burden of overcoming this presumption is upon the party asserting the lack of consideration. *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991); *Pinney v. Tarpley*, 686 S.W.2d 574, 580 (Tenn. Ct. App. 1984). In an attempt to counter the presumption, White asserts that he and Harris entered into a prior oral agreement regarding attorney fees. The Rules of Professional Conduct, however, require that a contingency agreement regarding attorney fees shall be in writing. Tenn. Sup. Ct. R. 8, RPC 1.5(c). Moreover, the parol evidence rule prohibits evidence of any oral statements that contradict the terms of a written agreement. *Farmers & Merch. Bank v. Petty*, 664 S.W.2d 77, 81 (Tenn. Ct. App. 1983); *Frumin v. May*, 251 S.W.2d 314, 319 (Tenn. Ct. App. 1952). White failed to present any admissible evidence that the fee agreement lacked consideration because of a prior agreement.

White's other argument is that there are issues of material fact related to his fraudulent inducement claim. He asserts the following key material factual disputes: "Harris misrepresented that the written agreement would not be enforced; the letter agreement does not set forth the agreement between the parties; the fee agreement was non-recourse with White responsible only for out of pocket expenses; Harris was to obtain his fees from the defendants in the cases; White does not owe Harris anything under the agreement." The only support for these alleged material disputes is Harris's affidavit. As discussed above, the parol evidence rule would not allow evidence of oral statements to contradict the terms of the written agreement. Furthermore, Harris's affidavit is insufficient to establish fraudulent inducement. To show fraudulent inducement to contract, a party is required to prove: "(1) a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; (5) an injury resulting from the reliance." *Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 630 (Tenn. Ct. App. 2000). White's affidavit cannot establish Harris's knowledge or intent at the time when the alleged statement was made.

In the case of *Farmers & Merchants Bank v. Petty*, 664 S.W.2d at 80-82, this court rejected an argument similar to that being made by White in the present case. The bank in

*Farmers* sued Mr. Petty to collect on a promissory note, and Mr. Petty alleged that he had been fraudulently induced to sign the note because the bank president told him that he would never have to pay the note. *Id.* at 78. The court's opinion includes a discussion of promissory fraud; the court concluded that the Tennessee Supreme Court had expressed a willingness to consider adopting promissory fraud in "those cases where the statement of intention is shown to be false when made . . . by evidence other than subsequent failure to keep the promise or subjective surmise or impression of the promisee." *Id.* at 80-81. Because of ambiguity in the statement at issue, the court determined that this was not a case when the rule of promissory fraud might apply. *Id.* at 81. The court also relied upon the principle that parol evidence could not be "offered to contradict the sole obligation of a written contract." *Id.* In its discussion, the court made the following observations:

> Granting the necessity and justice of allowing defenses based upon misrepresentations which do not contradict or change the plain terms of a written instrument, the allowance of defenses based on oral statements clearly inconsistent with the written instrument sued upon would appear to be a radical departure from long established and accepted rules of law and would defeat the very purpose of committing agreements to writing.
>
> . . . [I]t must be recognized that one of the reasons for the parol evidence rule is to prevent fraud in presenting oral defenses to written agreements. That is, the parol evidence rule assumes that the parties deliberately chose to put their agreement in writing to avoid the uncertainties of oral evidence, including the possibility of false testimony as to oral conversations. Thus, the parol evidence rule is a "quasi-statute of frauds" which rejects evidence of any oral statement in contradiction of the terms of a written agreement.

*Id.* at 81-82. The same reasoning leads us to reject White's fraudulent inducement argument in the present case. *See also Rankin v. Smith*, No. W2003-00992-COA-R3-CV, 2004 WL 1908793, at *3 (Tenn. Ct. App. Aug. 23, 2004).

2.

White next argues that the trial court erred in awarding Harris more than the contract maximum for attorney fees and costs.

The award of attorney fees is within the trial court's discretion and will not be overturned absent an abuse of discretion. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). Rule 1.5(a) of the Rules of Professional Conduct sets out the factors to be considered in determining the reasonableness of an attorney's fee. Tenn. Sup. Ct. R. 8,

RPC 1.5(a). Under the abuse of discretion standard, we look at the evidence in the light most favorable to the trial court's decision. *Id.* Thus, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness," and "we are not permitted to substitute our judgment for that of the trial court." *Caldwell v. Hill,* 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007).

White does not dispute that the trial court had the authority to award attorney fees under the terms of the fee agreement. He argues that the trial court awarded more attorney fees than are authorized under the contract: "The court should have enforced the contract language limiting the maximum award to $18,991.93 and not allowed the additional $12,286.77 in expenses."

To address White's argument, we begin by reviewing the language of the fee agreement and the pertinent orders of the trial court. The fee agreement provides: "If I have to bring suit against you to collect any balance owed, you agree to pay as attorney's fees an additional amount of 33.33% of the balance owed or reasonable attorneys fees and expenses, whichever is less." Based upon this provision, Harris filed a motion in February 2011 for the court to award him $18,991.93 for the attorney fees incurred in collecting a judgment against White.[3] White agrees that the provision authorized the court to award Harris $18,991.93 in attorney fees.

Harris subsequently filed a motion for discretionary costs pursuant to Rule 54.04(2) of the Tennessee Rules of Civil Procedure. Along with the motion, Harris submitted an itemized and verified bill of costs in the amount of $13,957.27 for court reporter charges, expert witnesses, and trial notebooks. After a hearing in March 2011, the trial court entered an order on April 1, 2011, in which it disallowed two of the costs claimed by Harris and entered judgment against White for $12,286.77 in discretionary costs.

As Harris points out in his brief, the discretionary costs awarded relate to the trial regarding White's counterclaim for negligence. They did not arise from Harris's suit to enforce the attorney fee agreement but from a separate tort action brought by White. *See J & B Inv., LLC v. Surti*, 258 S.W.3d 127, 138-39 (Tenn. Ct. App. 2007). Moreover, discretionary costs are distinct from attorney fees. *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 309-10 (Tenn. 2009). Rule 54.04 allows a trial court to award discretionary costs to a prevailing party. Tenn. R. Civ. P. 54.04; *Fannon v. City of LaFollette*, 329 S.W.3d 418, 433-34 (Tenn. 2010).

---

[3]This figure represents the lesser amount of the two figures described in the agreement–"33.33% of the balance owed or reasonable attorneys fees and expenses."

Thus, White's argument regarding the trial court's award of attorney fees is based upon a misapprehension of the court's orders. We find no abuse of discretion in the trial court's actions.

3.

We now address the remaining three issues, which relate to the jury trial regarding White's counterclaim against Harris for legal malpractice.

White's first argument is that the trial court submitted an erroneous question to the jury in the jury verdict form. The decision to use a special verdict form and the questions included on the form are within the discretion of the trial court. Tenn. R. Civ. P. 49; *Smith v. Parker*, 373 S.W.2d 205, 211 (Tenn. 1963); *Ingram v. Earthman*, 993 S.W.2d 611, 640 (Tenn. Ct. App. 1998). A reviewing court should reverse the verdict "only when the special verdict form is confusing or inconsistent with the trial court's instructions." *Ingram*, 993 S.W.2d at 641.

The first two questions on the jury verdict form in this case are as follows:[4]

1. In "*Edward K. White, III v. Dennis Joslin 2000, Inc., and Frank Burnett*; No. 06044; Circuit Court for the 21st Judicial District, Williamson County, Franklin, Tennessee" (the "Williamson County case"), do you find that James H. Harris, III was negligent in his representation of Edward K. White, III?

      Yes\_\_\_\_ No\_\_\_\_

If your answer to Question #1 is "No," skip Question #2 and Question #3 and go on to Question #4.

2. Do you find that, except for James Harris, III's negligence, the Williamson County case would have resulted in a collectible judgment in Edward K. White's favor?

      Yes\_\_\_\_ No\_\_\_\_

White's argument is that Question #2 was the wrong question to ask because it was undisputed that the Williamson County judgment against Burnett was preserved. What the

---

[4]The jury verdict form includes a total of eight questions/instructions. White assigns error only to the second question.

jury needed to determine, he argues, was whether Harris's negligence caused the loss of one (or more) collectible judgment(s) out of four (the two Williamson County judgments and two related Oklahoma judgments). White asserts that the jury was not presented with the proper issue and that the jury verdict was therefore confusing.

Even if we accept White's reasoning, we cannot agree with his conclusion that the jury verdict should be vacated or reversed. The jury answered Question #1 in the negative, finding that Harris did not act negligently in his representation of White in the Williamson County case. Therefore, the jury never reached Question #2. We find no abuse of discretion in the trial court's jury verdict question.

4.

White's next contention is that the trial court erred in failing to submit special instructions to the jury. In support of this argument, White points to a motion in limine he made five days prior to trial. This motion did not, however, request special instructions to the jury. Rather, White moved the trial court "to enter judgment for him on the two issues that the two cases within the case [the Williamson County and Dyer County cases] would have been won but for Plaintiff and Counter-Defendant Harris' ("defendant") negligence." He asserted that the relevant facts were not in dispute. White denies that this motion in limine amounted to a request for partial summary judgment since it involved only one element of his malpractice claim.

A motion in limine is a vehicle for pre-trial evidentiary questions. *Duran v. Hyundai Motor Am., Inc.*, 271 S.W.3d 178, 192 (Tenn. Ct. App. 2008). Rule 56.01 of the Tennessee Rules of Civil Procedure allows a party seeking to recover on a claim to move for summary judgment "upon all or any part thereof." Such motions must be made at least thirty days before the hearing date. Tenn. R. Civ. P. 56.04. Regardless of the appropriate legal designation, White's motion requested a dispositive, substantive ruling, not an evidentiary ruling. *See id.* at 192-93.

We find no error in the trial court's denial of White's "motion in limine for judgment," a motion which did not request special jury instructions as argued on appeal.

5.

White's final argument is that the trial court erred in denying his post-trial motion for judgment in accordance with his motion for a directed verdict, and motion for a new trial. We find no merit in this argument.

In reviewing the denial of a motion under Tennessee Rule of Civil Procedure 50.02 for judgment in accordance with the party's motion for a directed verdict, appellate courts apply the same standard of review used for the denial of a motion for a directed verdict. *Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977); *Plunk v. Nat'l Health Investors, Inc.*, 92 S.W.3d 409, 412 (Tenn. Ct. App. 2002). Thus, a reviewing court does not weigh the evidence or evaluate witness credibility; instead, the court must "review the evidence most favorably to the party against whom the motion is made, give that party the benefit of all reasonable inferences from the evidence, and disregard all evidence contrary to that party's position." *Plunk*, 92 S.W.3d at 412-13. The jury's verdict should not be overturned "when reasonable persons could draw conflicting conclusions from the facts." *Id.* at 413.

In ruling on a motion for new trial, the trial court acts as thirteenth juror; therefore, it "must independently weigh the evidence, determine the issues presented, and decide whether the jury's verdict is supported by the evidence." *Dickey v. McCord*, 63 S.W.3d 714, 718 (Tenn. Ct. App. 2001). A reviewing court must presume that the trial court properly performed its role as thirteenth juror when the trial court approves the verdict without comment. *Id.* The judgment should be reversed and a new trial ordered only if the record includes "statements that the trial court was dissatisfied with or disapproved of the jury's verdict or when the trial court absolved itself of or misconstrued its function as the thirteenth juror." *Id.* at 719.

Applying these standards to the present case, we can only affirm the trial court's judgment. The record on appeal does not include a complete transcript of the trial. Rather, the record contains two portions of the transcript–namely, the testimony of Layne Holley, expert witness for Harris, and the testimony of Harris himself—as well as all of the trial exhibits.[5] Pursuant to Tenn. R. App. P. 24, the appellant bears responsibility for preparing the record and providing the court with an adequate record to review the issues on appeal. *See Jennings v. Sewell-Allen Piggly Wiggly*, 173 S.W.3d 710, 713 (Tenn. 2005). Since White challenges the jury verdict, this court cannot perform any meaningful review without a complete transcript. Without an adequate transcript, a reviewing court "must conclusively presume there was sufficient evidence to support the verdict . . . ." *McDonald v. Onoh*, 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989). Moreover, with respect to the motion for new trial, the trial court's order specifically states that "upon a review of the evidence heard and the verdict returned in this matter, the Court is of the opinion that [White] is entitled to no relief on any of the grounds raised in the motion." Thus, the court expressed no dissatisfaction

---

[5]We note that White relies upon the affidavit of Larry Vaughan, his expert witness, but failed to include a transcript of Vaughan's testimony on appeal. Rather, he cites to Vaughan's affidavits, which were not admitted into evidence but appear as trial exhibits for identification only.

with or disapproval of the jury verdict, and there is no indication that the court misconstrued its function as thirteenth juror.

CONCLUSION

We affirm the judgment of the trial court in all respects. Costs of appeal are assessed against the appellant, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE